Present:  All the Justices

ROBERT LEE JAY

v.  Record No. 071432

COMMONWEALTH OF VIRGINIA

OPINION BY JUSTICE CYNTHIA D. KINSER
April 18, 2008

DARIUS TREMAYNE JAMES

v.  Record No. 071599

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

These appeals involve a common question regarding the Court of Appeals' use of Rule 5A:20(e) to dismiss a petition for appeal, or a portion thereof, when an appellant does not comply with the rule's requirements. Because the provisions of Rule 5A:20(e) do not impose jurisdictional requirements, we conclude that the Court of Appeals erred in its application of the rule.

In the appeal by Darius Tremayne James, we also conclude that the evidence was insufficient to sustain his convictions for attempted robbery and attempted use of a firearm during the commission of attempted robbery.

We will first summarize the relevant facts and proceedings of each case that pertain to the Court of Appeals' application of Rule 5A:20(e) and then analyze that

issue.  In a separate section of the opinion, we will address the facts pertinent to James' challenge to the sufficiency of the evidence and resolve that question.

I. RULE 5A:20(e)

A. Relevant Facts and Proceedings

1. <u>Jay v. Commonwealth</u>

At a bench trial in the Circuit Court for the City of Colonial Heights, Robert Lee Jay was found guilty of breaking and entering a dwelling in the daytime with the intent to commit larceny, in violation of Code § 18.2-91, and grand larceny, in violation of Code § 18.2-95.  The trial court sentenced Jay to 20 years of incarceration for the grand larceny conviction.  The court suspended that sentence and also suspended imposition of the sentence for the breaking and entering conviction for 20 years on the condition that Jay, among other things, serve 12 months of incarceration in a regional jail.

Jay appealed his convictions to the Court of Appeals of Virginia.  He presented two questions in his petition for appeal in the Court of Appeals, only one of which is pertinent to the issue before us: "Whether the trial court erred in finding sufficient factual evidence that the defendant committed the breaking and entering given that

2

there was a complete lack of direct evidence linking the defendant to the actual breaking and entering."

In the "Principles of Law and Argument" section of his petition for appeal, Jay addressed that specific question presented in two paragraphs. In the first paragraph, Jay quoted from the trial court's holding with regard to the breaking and entering charge and then argued "there was no direct evidence linking the defendant to the breaking and entering," i.e., no boot prints associated with Jay, no fingerprints, no DNA evidence, no eyewitnesses, and no confession by Jay to the breaking and entering. In the second paragraph, Jay stated:

> The Commonwealth is required to exclude all reasonable hypotheses of innocence. The undersigned presented a reasonable hypothesis at trial. That argument was that there could have easily been a co-conspirator in this case, assuming that the defendant was involved in the first place. That person could have committed the breaking and entering and the defendant could have come into possession of said property after the breaking and entering. Given the complete lack of direct evidence linking the defendant to the breaking and entering, the [trial c]ourt improperly convicted the defendant of breaking and entering.

In a per curiam order, the Court of Appeals held that, with regard to Jay's challenge to the sufficiency of the evidence to sustain his breaking and entering conviction, Jay's petition for appeal failed to comply with Rules

3

5A:12(c) and 5A:20(e).  Jay v. Commonwealth, Record No. 3170-06-2 (June 8, 2007).  The Court of Appeals explained that "Rule 5A:20(e), in conjunction with Rule 5A:12(c), mandates that the petition for appeal include '[t]he principles of law, the argument, and the authorities relating to each question presented . . . .' "  Id., slip op. at 3.  Citing its decisions in Buchanan v. Buchanan, 14 Va. App. 53, 415 S.E.2d 237 (1992), and Theismann v. Theismann, 22 Va. App. 557, 572, 471 S.E.2d 809, 816, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996), the Court of Appeals concluded that Jay "did not comply with Rule 5A:20(e); the petition for appeal does not contain sufficient principles of law, argument, or citation to legal authorities or the record to fully develop" the argument regarding the breaking and entering conviction.  Jay, slip op. at 3.  Consequently, the Court of Appeals dismissed the appeal with regard to that one question presented.[1]  Id.

2. James v. Commonwealth

---

[1] In his other question presented, Jay stated: "Whether the trial court erred in applying the presumption of possession of recently stolen property to all of the property that was stolen from the residence when the evidence only showed that the defendant was in possession of a small portion of the stolen property."  The Court of Appeals addressed the merits of this question presented and

4

Darius Tremayne James was convicted in a bench trial in the Circuit Court of the City of Virginia Beach of attempted robbery in violation of Code §§ 18.2-58 and 18.2-26; conspiracy to commit robbery in violation of Code §§ 18.2-22 and 18.2-58; and attempted use of a firearm during the commission of attempted robbery in violation of Code § 18.2-53.1. The trial court sentenced James to five years of incarceration on the attempted robbery conviction, five years on the conspiracy conviction, and three years on the conviction for attempted use of a firearm. The trial court suspended both of the five-year sentences.

In his petition for appeal to the Court of Appeals, James challenged the sufficiency of the evidence on all three convictions in the following question presented: "Whether there was sufficient evidence to convict the defendant of attempted robbery, conspiracy to commit robbery and use of a firearm during the commission of an attempted robbery?" As pertinent to the issue before us, James, in the "Argument" section of his petition for appeal, first recited several general principles of law, with citations to supporting authority, such as the principle that the Commonwealth must prove each element of

denied the petition for appeal on that issue. Jay, slip op. at 1-2.

5

a crime beyond a reasonable doubt.  With regard to his challenge to the sufficiency of the evidence to sustain his conviction for conspiracy, James summarized, in a single paragraph, the relevant evidence adduced at trial concerning the conspiracy to commit robbery and then stated:

> One's assumption or hope that another will participate or help, with no discussion or plan in place, is not an agreement; thus there was no conspiracy.  With the evidence only consisting of [the accomplice's] presence and testimony regarding what [the accomplice] may or may not have known, that is insufficient to convict the defendant of conspiracy to commit robbery.

In a per curiam order, the Court of Appeals dismissed the portion of James' petition for appeal challenging the sufficiency of the evidence to sustain the conviction for conspiracy.  James v. Commonwealth, Record No. 2335-06-1, slip op. at 1 (March 21, 2007).  The Court of Appeals explained that James' "petition for appeal did not comply with Rule 5A:20(e); the petition for appeal does not contain sufficient principles of law, or citation to legal authorities to fully develop [James'] conspiracy argument."[2] Id.  James demanded consideration by a three-judge panel of

---

[2]  The Court of Appeals addressed the merits of James' challenges to the sufficiency of the evidence to sustain his convictions for attempted robbery and attempted use of a firearm during the commission of attempted robbery and

6

the Court of Appeals, which concluded: "For the reasons previously stated in the order entered by this [c]ourt on March 21, 2007, the petition for appeal in this case hereby is denied in part and dismissed in part." James v. Commonwealth, Record No. 2335-06-1, slip op. at 1 (July 5, 2007).

## B. Analysis

On appeal to this Court, both Jay and James assert that the Court of Appeals erred by dismissing a portion of their respective petitions for appeal based on their failure to comply with the requirements of Rule 5A:20(e). The Commonwealth, however, argues that the Court of Appeals did not err because each defendant failed to cite any authority in support of the questions presented to which Rule 5A:20(e) was applied. According to the Commonwealth, the Court of Appeals has routinely applied the provisions of Rule 5A:20(e) for more than a decade in the same manner as the court did in these two cases.

The provisions of Rule 5A:12(c) require "[t]he form and contents of the petition for appeal [to] conform in all respects to the requirements of the opening brief of appellant" as set forth in Rule 5A:20. Pursuant to Rule

denied his petition for appeal on those issues. James, slip op. at 2-4.

7

5A:20, an appellant's opening brief, and likewise a petition for appeal, must contain eight items. The relevant provisions of subsection (e), which are at issue in these appeals, require a petition for appeal to contain:

> The principles of law, the argument, and the authorities relating to each question presented. . . . With respect to each question, the principles, the argument, and the authorities shall be stated in one place and not scattered through the brief.

The Court of Appeals' interpretation of Rule 5A:20(e), like the interpretation of a statute, presents a question of law that we review de novo. See Washington v. Commonwealth, 272 Va. 449, 455, 634 S.E.2d 310, 313 (2006) (statutory interpretation raises a question of law that this Court reviews de novo); Ainslie v. Inman, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003) (same).

In the cases before us, the Court of Appeals dismissed portions of the petitions for appeal for failure to cite authorities in support of certain questions presented as required by Rule 5A:20(e). By dismissing rather than denying the appeals, the Court of Appeals rendered the requirements of Rule 5A:20(e) jurisdictional. The Court of Appeals, however, erred in doing so, and in fact, has taken a different position in prior cases. In Riner v. Commonwealth, 40 Va. App. 440, 579 S.E.2d 671 (2003), aff'd

8

on other grounds, 268 Va. 296, 601 S.E.2d 555 (2004), the

Court of Appeals stated:

> The filing of a timely petition for appeal
> under Rule 5A:3(a), like the filing of a timely
> notice of appeal under that same rule, is
> jurisdictional.  Nevertheless, the provisions of
> Rule 5A:12(c) [and its concomitant, Rule
> 5A:20(e)] stating what the petition "shall
> contain," like the provisions of Rule 5A:6(a)
> stating that "[n]o appeal shall be allowed"
> unless a copy of the notice of appeal is mailed
> or delivered to the clerk of the Court of
> Appeals, are not jurisdictional.

Id. at 454, 579 S.E.2d at 678 (emphasis in original).  In

many instances, the Court of Appeals has adhered to this

distinction between jurisdictional and non-jurisdictional

rule requirements by holding that an appellant's failure to

comply with the provisions of Rule 5A:20(e) resulted in a

waiver of the question presented and supporting argument

and/or a denial of the appeal, but not a dismissal of the

appeal.  See, e.g., Stokes v. Commonwealth, 49 Va. App.

401, 409-10, 641 S.E.2d 780, 784 (2007) (declining to

address argument because the appellant cited no authority

to support the argument and affirming trial court); Mason

v. Commonwealth, 49 Va. App. 39, 46 n.2, 636 S.E.2d 480,

483 n.2 (2006) (affirming trial court and declining to

consider certain of the appellant's arguments because she

failed to provide argument or citation to authority); Epps

v. Commonwealth, 47 Va. App. 687, 718, 626 S.E.2d 912, 926-

9

27 (2006) (reversing trial court but declining to address an argument because the appellant did not cite any authority in support of the argument), aff'd on other grounds, 273 Va. 410, 641 S.E.2d 77 (2007); Jeter v. Commonwealth, 44 Va. App. 733, 739-41, 607 S.E.2d 734, 737 (2005) (holding that appellant's failure to cite any authority in his opening brief on a particular question presented constituted a waiver of an issue); Littlejohn v. Commonwealth, 24 Va. App. 401, 409, 482 S.E.2d 853, 857 (1997) (holding that the appellant waived a change of venue issue by failing "to submit a written argument on the issue in her [opening] brief.").

Likewise, in Buchanan and Theismann, cited in the per curiam orders in the cases before us, the Court of Appeals did not dismiss the appeals for failure to comply with Rule 5A:20(e). In Buchanan, the appellant did not fully develop an argument in his brief. 14 Va. App. at 56, 415 S.E.2d at 239. The Court of Appeals did not address that question on the basis that "[s]tatements unsupported by argument, authority, or citations to the record do not merit appellate consideration." Id. The Court of Appeals affirmed, in part, and reversed, in part, the decree of the trial court; the Court of Appeals did not dismiss any part of the appeal. Similarly, in Theismann, the appellant, in

her brief, did not develop the argument or provide citations to the record in support of certain claims. 22 Va. App. at 572, 471 S.E.2d at 816. The Court of Appeals did not dismiss that portion of the appeal but merely concluded that "the trial court did not commit reversible error." Id.

However, in the cases before us and in other instances, the Court of Appeals has treated the requirements of Rule 5A:20(e) as jurisdictional by dismissing all or portions of appeals. See, e.g., Cash v. Clark, Record No. 0170-07-3 (November 13, 2007) (dismissing appeal as to certain issues because the appellant did not cite principles of law, argument, or citation to legal authorities as required by Rule 5A:20(e)); Kidd v. Commonwealth, Record No. 0348-07-2 (September 14, 2007) (dismissing question presented in petition for appeal because the appellant did not cite legal authority in support of his contention, thereby violating Rule 5A:20(e)); Parrish v. Commonwealth, Record No. 2812-06-4 (July 11, 2007) (same); Ware v. Commonwealth, Record No. 2350-06-1 (May 1, 2007) (same); Motley v. Motley, Record No. 2551-06-2 (April 3, 2007) (dismissing appeal in part due to the appellant's failure to comply with Rule 5A:20(e)); Klein v. Klein, 49 Va. App. 478, 482, 642 S.E.2d

313, 315-16 (2007) (dismissing appeal for several reasons, including fact that appellant did not comply with Rule 5A:20(e)); Nolan v. Virginia Dep't of Corrections, Record No. 2868-05-3 (October 17, 2006) (dismissing appeal because appellant, among other things, cited no legal authority in support of the first question presented).

The provisions of Rule 5:17(c)(4) parallel the requirements of Rule 5A:20(e) by requiring a petition for appeal to this Court to contain "[t]he principles of law, the argument, and the authorities relating to each assignment of error." Rule 5:17(c)(4). And, the provisions of Rule 5:27 require an appellant's opening brief to conform to the requirements for a petition for appeal set forth in Rule 5:17(c). When an appellant fails to comply with Rule 5:17(c)(4), this Court generally treats the argument as waived. See, e.g., Atkins v. Commonwealth, 272 Va. 144, 149, 631 S.E.2d 93, 95 (2006) (failure to brief an assignment of error constitutes a waiver of the issue); Muhammad v. Commonwealth, 269 Va. 451, 477, 619 S.E.2d 16, 30 (2005) (same); Elliott v. Commonwealth, 267 Va. 396, 422, 593 S.E.2d 270, 286 (2004) (same); Burns v. Commonwealth, 261 Va. 307, 318, 541 S.E.2d 872, 880 (2001) (same); Kasi v. Commonwealth, 256 Va. 407, 413, 508 S.E.2d 57, 60 (1998) (same); Jenkins v. Commonwealth, 244 Va. 445,

451, 423 S.E.2d 360, 364 (1992) (same); <u>Quesinberry v.</u> <u>Commonwealth</u>, 241 Va. 364, 370, 402 S.E.2d 218, 222 (1991) (same).[3]

Our conclusion that the Court of Appeals erred by treating the provisions of Rule 5A:20(e) as jurisdictional requirements mandating a dismissal of an appeal when an appellant does not comply with the rule does not leave the Court of Appeals without appropriate remedies. Certainly, the Court of Appeals may, among other things, require an appellant to re-submit the petition for appeal or opening brief, or it may treat a question presented as waived. The Court of Appeals should, however, consider whether any failure to strictly adhere to the requirements of Rule 5A:20(e) is insignificant, thus allowing the court to address the merits of a question presented. By our decision today, we in no way condone an appellant's failure to comply with Rule 5A:20(e) or any other rule. But, to hold otherwise would mean that, if an appellant did not list cases alphabetically in the table of citations as required by Rule 5A:20(a), dismissal of the appeal would be mandated as a jurisdictional matter.

---

[3] To the extent that this Court has dismissed petitions for appeal in whole or in part for failure to comply with the requirements of Rule 5:17(c)(4), we will discontinue such practice in light of today's holding.

13

Therefore, we will reverse the judgments of the Court of Appeals in both appeals and remand both cases for the Court of Appeals to address the questions presented and/or issues erroneously dismissed in each. In Jay's appeal, that question challenged his conviction for breaking and entering, and in James' appeal, the question related to his conviction for conspiracy to commit robbery.

## II. SUFFICIENCY OF EVIDENCE

### A. James v. Commonwealth Relevant Facts

As previously stated, James was convicted of attempted robbery, conspiracy to commit robbery, and attempted use of a firearm during the commission of attempted robbery. On appeal to this Court, he challenges the sufficiency of the evidence to sustain the convictions. In light of our remand of his conspiracy conviction to the Court of Appeals, only the issue relating to the sufficiency of the evidence to sustain the other two convictions remains before us.

The facts adduced at trial, viewed in the light most favorable to the Commonwealth as the prevailing party in the trial court, see Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003), show that this case arose out of a failed undercover narcotics purchase in which James purportedly intended to rob the supposed buyer

14

instead of selling contraband. Riya N. Sloan, an undercover narcotics detective with the City of Virginia Beach Police Department, testified about her arrangements, made via three telephone calls to an individual known only at that time as "Diz," to meet at a particular retail store located in the City of Virginia Beach for the purpose of purchasing 1/2 pound of marijuana for the price of $950. "Diz" was later identified as James.[4]

When James arrived at the meeting site, he parked his vehicle in the third space over from the passenger side of Sloan's unmarked vehicle. Sloan rolled down the passenger-side window and "waved" for James to come over to her vehicle. James refused and indicated that he wanted Sloan to come up to his vehicle. According to Sloan, they "went back and forth a few times" about which one of them was going to get out of his or her respective vehicle. Finally, Sloan decided to approach James' vehicle and asked to see the marijuana. James, however, wanted Sloan first

---

[4] Sloan audio-taped two of the three telephone conversations with James, and the Commonwealth introduced those tapes into evidence at trial. During the meeting with James, Sloan wore an open microphone so that nearby police officers could monitor the transaction. The Commonwealth introduced into evidence at trial the audio-tape of Sloan's conversation with James during their meeting.

to get into his vehicle.  Sloan testified at trial about the ensuing events:

> I asked him to see the marijuana that he was supposed to bring.  He told me to get in the car.  I indicated that I was not going to get in the car.  He started indicating more forcibly, Just get in the car.  You know, Things are hot.  And I said, I'm not getting in the car.  I don't know you.  You don't know me.  You're making me nervous.  Just show me the product.  I'll give you the money, and I'll get out of here.  He continued on and on and on that he wasn't going to – he wasn't going to go and show it to [me] and he wasn't going to give it to me unless I got in the car.  I continuously asked him – I told him that I was nervous, that I was scared.  I wasn't going to get in the car, that I wasn't stupid, you know, I was a female.  And I said, you know, It's just the two of us.  Just give me the product, and I'll be gone.  He said that he wouldn't.  At that time I went over to the passenger side of the vehicle.  I opened the passenger door and wound down the passenger window so I can put a little distance in between the two of us to talk to him.  He kept indicating that he wanted me to get in the vehicle.  I kept telling him that I wasn't.  All I wanted to do was see the marijuana and give him the money and leave.  And at that time the rest of the members of the special investigations came up and placed him under arrest.

When Jesus Averilla, a narcotics investigator with the City of Virginia Beach Police Department, was placing James on the ground in order to handcuff him, a handgun slipped out from under James' waist belt.[5]  The handgun did not have a magazine in it.

---

[5] Detective Averilla admitted on cross-examination that he assumed that the firearm fell from James' waistband but

16

Another police officer working as part of the arrest team searched James' vehicle and discovered an individual lying underneath a pile of clothes in the cargo area of James' sports utility vehicle.[6] The individual, who was identified as Joshua Mitchell, told the detective he was trying to sleep. The detective also found a magazine containing bullets underneath Mitchell's body. The magazine fit the handgun that Detective Averilla had recovered. No marijuana or other narcotics were found in James' vehicle or on his person.

Johnathan Grover, another narcotics detective with the City of Virginia Beach Police Department who participated in James' arrest, testified about his interview of James after James was transported to police headquarters. Upon reading James his Miranda rights, Detective Grover informed James that Sloan, the woman with whom he had been dealing, was a police officer. James advised Grover that he understood his Miranda rights and that he did not sell

that he did not actually see from where it fell. Detective Averilla heard a noise that drew his attention to the handgun on the ground as he was pulling James out of the vehicle and taking him down to the ground.

[6] During the time when Detective Sloan was standing at the driver and passenger sides of James' vehicle, she never observed anyone other than James in his vehicle. Sloan and James had agreed that both would come alone to the meeting. Another detective, however, accompanied Sloan in her vehicle.

"weed" and did not have any. During further questioning, James said, "I was going to take her money and then tell her to get out." James told Detective Grover that he was going to give Detective Sloan "a bag" (even though no bag was found in James' vehicle), and insisted that he was not going to apply any force in order to obtain the money.

When asked why Mitchell was hiding in the cargo area of the vehicle, James responded, "[w]ell, she was going to see two dudes and be scared and she thought that [I] had some weed." According to Detective Grover, James admitted that "the game plan" was to scare Detective Sloan, and if he got the money, Mitchell was to stay hidden, but, if James did not get the money, Mitchell was to scare Detective Sloan. To explain why he brought a gun if he was just planning to meet a girl by herself and had no "weed" to sell, James responded, "[y]ou got to be safe." At one point during the interview, James admitted that the plan was to show the handgun but not to use it. He then recanted, stating that he did not intend to display the firearm.

James also testified at trial. He denied having any discussions with Mitchell about what was going to occur when James went to the retail store supposedly to sell marijuana, but he admitted that he told Detective Grover

18

that he (James) assumed Mitchell thought James was going to show the firearm and that Mitchell would jump out if something went wrong during the meeting. James also acknowledged that Mitchell was in the room when he was talking with Detective Sloan on the telephone to set up the marijuana buy and that Mitchell knew, however, that James did not have any marijuana. In James' words, "I had no type of discussion with [Mitchell], but I assume that he knew fully what was going on."

On cross-examination, James admitted the details of his plan to rob Detective Sloan. He acknowledged that he arranged to meet Detective Sloan for the purported purpose of selling her 1/2 pound of marijuana and that he instructed her to bring $950. James further admitted that he lied to Detective Sloan about having marijuana to sell and that his intention all along was to rob her.

James also testified during cross-examination that, while en route to the arranged meeting location, he told Mitchell to hide in the back of the vehicle. When asked if he assumed Mitchell would jump out if Detective Sloan was not cooperative, James said: "Assumed. I thought. I'm not saying that he would." Finally, James acknowledged that the handgun was initially loaded but that he removed the

19

magazine on the way to the meeting and threw it to his "partner" in the back of the vehicle.

The trial court denied James' motions to strike the Commonwealth's evidence both at the close of the Commonwealth's case in chief and at the close of all the evidence and found James guilty of all charges. On appeal to the Court of Appeals, James challenged the sufficiency of the evidence to sustain each of his convictions. In a per curiam order, the Court of Appeals concluded that the evidence was competent, not inherently incredible and sufficient to prove beyond a reasonable doubt that James attempted to rob Detective Sloan by force and attempted to use a firearm while attempting to commit robbery. James, slip op. at 3-4 (March 21, 2007). A three-judge panel of the Court of Appeals affirmed that judgment in its entirety. James, slip op. at 1 (July 5, 2007).

## B. Analysis

On appeal to this Court, James asserts that the Court of Appeals erred by holding that the evidence was sufficient to sustain his convictions for attempted robbery and attempted use of a firearm during the commission of attempted robbery. When a defendant challenges the sufficiency of the evidence, we review the evidence and all reasonable inferences flowing from that evidence in the

20

light most favorable to the Commonwealth, the prevailing party in the trial court.  Hudson, 265 Va. at 514, 578 S.E.2d at 786.  "[W]e will not disturb the trial court's judgment unless it is plainly wrong or without evidence to support it."  Hedrick v. Commonwealth, 257 Va. 328, 340, 513 S.E.2d 634, 641 (1999).

### 1. Attempted Robbery

In Virginia, robbery is a common law crime defined as the "taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation."  Pierce v. Commonwealth, 205 Va. 528, 532, 138 S.E.2d 28, 31 (1964); Commonwealth v. Jones, 267 Va. 284, 286, 591 S.E.2d 68, 70 (2004); George v. Commonwealth, 242 Va. 264, 277, 411 S.E.2d 12, 20 (1991).  Attempted robbery, also a common law offense, requires the Commonwealth "to prove beyond a reasonable doubt that [the defendant] intended to steal personal property from [the victim], against his will, by force, violence, or intimidation.  Additionally, the Commonwealth must prove beyond a reasonable doubt that [the defendant] committed a direct, but ineffectual, act to

21

accomplish the crime."[7] <u>Pitt v. Commonwealth</u>, 260 Va. 692, 695, 539 S.E.2d 77, 78-79 (2000) (citing <u>Johnson v. Commonwealth</u>, 209 Va. 291, 293, 163 S.E.2d 570, 572-73 (1968)). Stated differently, an attempt to commit a crime consists of two elements: "(1) [t]he intent to commit a crime; and (2) a direct act done towards its commission, but falling short of the execution of the ultimate design." <u>Glover v. Commonwealth</u>, 86 Va. (11 Hans.) 382, 385, 10 S.E. 420, 421 (1889). This second element of the crime of attempt is commonly referred to as an "overt act." <u>See</u>, e.g., <u>Sizemore v. Commonwealth</u>, 218 Va. 980, 984, 243 S.E.2d 212, 214 (1978). "The question as to what is [an overt] act, is often a difficult one to determine, and no general rule, which can be readily applied as a test to all cases, can be laid down. . . . Each case must, therefore, be determined upon its own facts." <u>Hicks v. Commonwealth</u>, 86 Va. (11 Hans.) 223, 226, 9 S.E. 1024, 1025 (1889); <u>see also Sizemore</u>, 218 Va. at 985, 243 S.E.2d at 215.

With regard to the requirement of an overt act, the Commonwealth argues that "James . . . undertook numerous direct acts toward the commission of the crime, including arranging the meeting, agreeing to the location, setting

_____

[7] Code §§ 18.2-26 and 18.2–58 fix the punishment for an attempt to commit a noncapital felony and for robbery,

22

the conditions, retrieving the pistol and having Mitchell hide in the back." The Commonwealth also points to the evidence showing that James met with Detective Sloan, refused to show her the "non-existent marijuana," and repeatedly tried to get her into his vehicle.

James argues, however, that "[b]ecause the scenario was interrupted, it is an unwarranted assumption that he was going to use force." As an alternative interpretation of the facts, James posits that it was not untenable that, if Detective Sloan had given James the money, he would have told her that he did not have any marijuana and did not intend to return the money, and would have then directed her to get out of the vehicle without ever using any force or intimidation. According to James, the evidence thus supported an attempt to obtain money by false pretenses but not robbery. We agree with James.

In order to convict James for the crime of attempted robbery, the Commonwealth had to prove beyond a reasonable doubt not only that James intended to rob Detective Sloan but also that he undertook some "direct, but ineffectual, act" toward the consummation of taking property from Detective Sloan against her will by force, violence, or intimidation. Pitt, 260 Va. at 695, 539 S.E.2d at 78-79.

respectively.

23

"While the overt acts of the accused [need not be] the last proximate acts necessary to the consummation of the crime, they [must be] direct overt acts well calculated to accomplish the result intended." Granberry v. Commonwealth, 184 Va. 674, 678, 36 S.E.2d 547, 548 (1946). As we explained in Hicks:

> [T]he act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. In other words, while it need not be the last proximate act to the consummation of the offence attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offence after the preparations are made.

86 Va. (11 Hans.) at 226-27, 9 S.E. at 1025. See also Anderson v. Commonwealth, 195 Va. 258, 264, 77 S.E.2d 846, 849 (1953).

Here, the evidence, viewed in the light most favorable to the Commonwealth, established James' intent to commit the crime of robbery, but it did not establish beyond a reasonable doubt the other necessary element of attempted robbery, i.e., a direct overt act that could fairly be characterized as "well calculated to accomplish the result intended." Granberry, 184 Va. at 678, 36 S.E. at 548. Detective Sloan testified that James repeatedly asked her to get into his vehicle and that she repeatedly refused.

24

Detective Sloan further testified that James never mentioned the firearm and that she never saw it. The Commonwealth also conceded at trial that James did not brandish the weapon.

Furthermore, at no time did James threaten Sloan in order to get her into his vehicle nor did he use any type of force or violence to do so. Moreover, James neither demanded nor even asked Detective Sloan to give him the money, and he took no direct action to accomplish that result. Without any such evidence, the events leading up to the arrest of James were just as consistent with an attempt to obtain money by false pretenses as they were with an attempt to commit robbery. Cf. Parker v. Commonwealth, 275 Va. 150, 152-53, 654 S.E.2d 580, 581-82 (2008) (in affirming a conviction for obtaining money under false pretenses, the evidence established that the defendant and his girlfriend arranged to meet an undercover officer, provided a price quote, met the officer in a parking lot, and then made an exchange of fake ecstasy pills for the officer's money).

When as here, the facts are "equally susceptible of two interpretations one of which is consistent with the innocence of the accused, [the trier of fact] cannot arbitrarily adopt that interpretation which incriminates

25

[the accused]." Burton v. Commonwealth, 108 Va. 892, 899, 62 S.E. 376, 379 (1908); accord Commonwealth v. Smith, 259 Va. 780, 782, 529 S.E.2d 78, 79 (2000). Stated differently, the Commonwealth had the burden to prove beyond a reasonable doubt that James committed the crime of attempted robbery and it failed to do so. One would have to resort to speculation and conjecture in order to find that James was attempting to rob Sloan as opposed to attempting to obtain money by false pretenses. This, of course, is impermissible. Coffey v. Commonwealth, 202 Va. 185, 188, 116 S.E.2d 257, 259 (1960) ("[E]vidence is not sufficient to support a conviction if it engenders only a suspicion or even a probability of guilt. Conviction cannot rest upon conjecture."). We therefore hold as a matter of law that the evidence in this case was insufficient to prove beyond a reasonable doubt that James committed the crime of attempted robbery.

2. Attempted Use of a Firearm

Our decision to reverse James' attempted robbery conviction necessarily requires a reversal of the conviction for attempted use of a firearm during the commission of attempted robbery under Code § 18.2-53.1. Under the plain language of Code § 18.2-53.1, there can be no conviction for use or attempted use of a firearm when

26

there has been no commission of one of the predicate offenses enumerated in that statute.  Bundy v. Commonwealth, 220 Va. 485, 488, 259 S.E.2d 826, 828 (1979) (a violation of Code § 18.2-53.1 occurs only when a firearm is used with respect to the felonies specified in the statute); but see Reed v. Commonwealth, 239 Va. 594, 596-98, 391 S.E.2d 75, 76-77 (1990) (upholding "inconsistent" verdict where the jury found the defendant not guilty of robbery but guilty of using a firearm in the commission of robbery).

## III. CONCLUSION

In summary, we will reverse the judgment of the Court of Appeals in Jay's appeal and remand for consideration of Jay's challenge to the sufficiency of the evidence to sustain his conviction for breaking and entering.  With regard to James' conviction for conspiracy to commit robbery, we will reverse the judgment of the Court of Appeals and remand for consideration of his challenge to the sufficiency of the evidence to sustain that conviction. Finally, we will reverse the judgment of the Court of Appeals upholding James' convictions for attempted robbery and attempted use of a firearm during the commission of attempted robbery and dismiss those indictments.

Record No. 071432 – <u>Reversed and remanded.</u>
Record No. 071599 – <u>Reversed and remanded in part, and dismissed in part</u>.