COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Powell and Senior Judge Clements


BRITTANY N. HASKINS

                                                        MEMORANDUM OPINION[*]
v.       Record No. 0054-11-3                                PER CURIAM
                                                         JUNE 7, 2011
LYNCHBURG DEPARTMENT
  OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                              J. Michael Gamble, Judge

              (Killis T. Howard; Killis T. Howard, P.C., on brief), for appellant.

              (Hope R. Townes; David E. Mass, Guardian *ad litem* for the minor
              children; Office of the City Attorney, on brief), for appellee.


        On December 29, 2010, the trial court terminated the residual parental rights of Brittany N.

Haskins to her children, M.M. and D.H., pursuant to Code § 16.1-283(B) and Code

§ 16.1-283(C)(2).  On appeal of this decision, Haskins challenges the sufficiency of the evidence to

support the terminations.  Upon reviewing the record and briefs of the parties, we conclude this

appeal is without merit.  Accordingly, we summarily affirm the decision of the trial court.  See

Rule 5A:27.

        On appeal, we view the evidence in the "'light most favorable' to the prevailing party in

the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

therefrom.'"  Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767

(2005) (quoting Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d

460, 463 (1991)).  When reviewing a decision to terminate parental rights, we presume the circuit

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

M.M. was born to Haskins and an unnamed father on March 2, 2008.[1] When M.M. was five months old, the Lynchburg Department of Social Services (DSS) received a report that Haskins abused him by striking him on the back with such force that his back reddened. DSS initiated services to help Haskins with the care of M.M. At that time, Haskins was homeless and unemployed. Haskins had lived in a series of shelters and the homes of friends and family members. Despite DSS's offers to assist Haskins in obtaining housing, Haskins did not secure a stable home for her and M.M. Haskins failed to complete an application to obtain Medicaid benefits for M.M. DSS took custody of M.M. on January 29, 2009 because Haskins had chronically neglected his needs and placed him in high risk situations.

D.H. was born to Haskins and Dennis Lee on May 15, 2009.[2] She was born with the condition known as hydrocephaly, which required consistent monitoring of her head circumference and affected her development. DSS removed D.H. from Haskins' care on July 6,

---

[1] Haskins has a son older than M.M. who resided with her stepmother.

[2] Lee's parental rights were terminated by the Lynchburg Juvenile and Domestic Relations District Court, and he did not appeal the decision.

2009. Haskins still had no housing, and had left or been dismissed from several shelters. The removal of D.H. followed an incident when Haskins had the child with her at a loud and crowded house party. After Lee arrived and took D.H. from Haskins, she threatened to throw a rock at him while he was holding the child.

After the children were removed from her custody, DSS instructed Haskins to obtain a psychiatric assessment with Johnson Health Care Clinic or the Community Services Board and obtain whatever medication was necessary for her mental health conditions. Haskins previously had been diagnosed with depression and attention deficit disorder. Haskins did not seek such assistance until March 2010, at the earliest. The foster care service plans for the two children also required that Haskins obtain safe and stable housing, participate in parenting classes, and attend visitations sessions with M.M. and D.H.

Haskins was offered weekly visitation with M.M. and D.H. She did not attend thirty-two of the sixty-five scheduled visitations with M.M. Haskins also missed twenty-seven of her scheduled forty-nine visitation sessions with D.H.

DSS referred Haskins to Mary Rice, a licensed professional counselor, for counseling for mental health issues. The counseling sessions were to occur at the DSS office following Haskins' visitation sessions with the children. After meeting with Haskins on August 25 and September 1, 2009, Haskins was inconsistent in attending scheduled counseling sessions in the following months. Eventually, Rice terminated the counseling with Haskins because Haskins missed more than three appointments without providing prior notice.

Rice also attempted parenting education with Haskins during her visitations with the children. Through her interactions with Haskins, Rice noted no improvement in Haskins' ability to parent the children appropriately and ensure the safety of both children.

While M.M. and D.H. were in the custody of DSS, Haskins was found guilty of fourteen charges, including trespassing, larceny, contempt, and identity fraud. Her incarceration for the offenses caused her to miss some of the visitations with the children.

DSS made efforts to place M.M. and D.H. in the custody of Haskins' relatives. However, none of the identified relatives was suitable due to advanced age, work responsibilities, or prior criminal convictions.

At the time of the termination hearing on November 18, 2010, M.M. had been in his foster home for more than a year. Evidence proved he was a happy child and had progressed well with speech and physical therapy. D.H. had remained in the same foster home since her removal from Haskins' custody. D.H.'s foster mother had closely monitored the child's special medical needs and obtained appropriate medical care for her. Although D.H.'s physical and mental development were delayed due to her medical situation, at the time of the termination hearing she was making progress and was beginning to talk. Both foster care families were potential adoptive placements for M.M. and D.H.

Haskins testified at the termination hearing that she was working two part-time jobs, studying to obtain her GED, and searching for a full-time job. She said she intended to enroll at community college. Haskins had an apartment where she had been living for three months, but she planned to move because the roof leaked. Haskins said she had missed her visitation and counseling sessions because she did not have transportation to the DSS office.[3] She said she had obtained appropriate medications to help her mental health conditions and had been in counseling since March 2010. In July 2010, Haskins had given birth again and placed the child for adoption.

_____

[3] DSS presented evidence that it provided appellant bus passes to enable her to attend the visitation and counseling sessions.

Appellant argues the evidence was insufficient to support the termination of her parental rights.[4] Pursuant to Code § 16.1-283(C)(2), a parent's residual parental rights "of a child placed in foster care . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child" and that

> [t]he parent . . . , without good cause, ha[s] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. . . .

Both M.M. and D.H. were removed from Haskins' custody because she failed to provide a safe and stable living environment for them, despite the efforts of DSS to assist her. Following the removal of M.M. and D.H., Haskins failed to follow through with services offered to her, including visitation with the children, parenting assistance, and individual counseling. Haskins did not obtain the required psychiatric assessment and medical treatment for her mental health conditions. Moreover, Haskins was convicted of a number of criminal offenses resulting in her incarceration. Although Haskins testified at the termination hearing that she was working, had an apartment, and was taking her medications, "'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Winfield v.

---

[4] DSS contends Haskins failed to comply with Rule 5A:20(c) and (e) because her brief does not contain accurate references to pages in the appendix where she preserved the specific arguments raised on appeal and the brief does not provide citations to legal authority relating to each assignment of error. In Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008), the Supreme Court announced that when a party's failure to strictly adhere to the requirements of Rule 5A:20 is significant, "the Court of Appeals may . . . treat a question presented as waived." Haskins' brief contains appendix page references to the beginning of her closing argument, in which she contended the evidence was insufficient to support termination. Moreover, the argument section of Haskins' brief contains some, although not extensive, references to legal authority. Accordingly, we find that any failure of appellant's brief to comply with Rule 5A:20 is not significant, and we do not find Haskins waived the issues she raises on appeal.

Urquhart, 25 Va. App. 688, 695-96, 492 S.E.2d 464, 467 (1997) (quoting Linkous v. Kingery, 10 Va. App. 45, 46, 390 S.E.2d 188, 194 (1990)).

In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

Clear and convincing evidence proved that termination of Haskins' parental rights was in the best interests of both M.M. and D.H. At the time of the termination hearing, M.M. was two years and eight months old, and he had lived with Haskins only ten months. D.H., who was one and one-half years old, had lived with Haskins only seven weeks. The children were thriving in the care of their foster families, both potential adoptive placements. D.H. was a child with medical needs requiring specific monitoring and care that were provided by her foster family. Haskins had failed to take advantage of the numerous opportunities for visitation with M.M. and D.H., and her parenting skills had not progressed.

We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'" Helen W. v. Fairfax Cnty. Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-28 (1991) (quoting Lowe v. Dep't of Pub. Welfare of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)). However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

We find the evidence sufficient to support the trial court's decision to terminate Haskins' parental rights to M.M. and D.H. pursuant to Code § 16.1-283(C)(2).  Therefore, we need not consider any challenge appellant raises to the sufficiency of the evidence for a termination under Code § 16.1-283(B).  See Fields, 46 Va. App. at 8, 614 S.E.2d at 659.

For the foregoing reasons, we summarily affirm the termination of Haskins' parental rights.

Affirmed.