<u>**VIRGINIA:**</u>

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday the 2nd day of April, 2020.*

Present: All the Justices

Marcellus McQuinn,                                                                           Appellant,

 against            Record No. 190266
                   Court of Appeals No. 0775-18-2

Commonwealth of Virginia,                                                                 Appellee.

                                                        Upon an appeal from a judgment
                                                        rendered by the Court of Appeals of
                                                        Virginia.

Marcellus McQuinn appeals his convictions for use of a firearm in the commission of an abduction and use of a firearm in the commission of a malicious wounding, contending that his convictions must be overturned because the jury did not find him guilty of the predicate offenses of abduction and malicious wounding. Because the Court of Appeals did not err in upholding the jury's verdicts, we affirm.

I.

At trial, the Commonwealth presented evidence that Vashawn Gray and Jarvoan Humphries had met one night in June 2017 to discuss the purchase of heroin in the apartment of Jarvoan's mother. Jarvoan and his niece, Jermisha Humphries, were present in the apartment taking care of Jarvoan's bedridden mother. During the meeting, Gray stated that he needed to return to his car to get money for the drugs. Gray left the apartment briefly and returned with McQuinn and another man named Jamel Scott.

As soon as McQuinn entered the apartment, he struck Jarvoan on the head with a gun several times. Jermisha began to retreat down the hallway to her grandmother's room, but Gray intercepted her, took her cell phone out of her hands, and pushed her into another bedroom. Scott told her to sit in a corner and to put a cover over her head. Scott and Gray came back to the bedroom and asked if Jermisha knew "where the stuff [was]" and "[w]here he hides it." J.A. at

After they had left the bedroom, Jermisha could hear them in the living room asking Jarvoan where the money was, telling him to get on the floor and lie on his stomach, and threatening to harm Jermisha if he did not comply. Jermisha shouted for her uncle to comply. At some point, two of the men[1] brought Jarvoan into the bedroom where Jermisha was and continued to search for money and drugs.

When they had brought Jarvoan back out to the living room, the men continued to search the apartment for money and drugs and told Jarvoan to lay on his stomach. McQuinn tied Jarvoan's hands behind his back with a belt. Eventually, Jarvoan freed his hands from the belt, and when Gray went back down the hallway to the bedroom where Jermisha was, Jarvoan took the opportunity to attack McQuinn. After slamming McQuinn against the washing machine and dryer, Jarvoan ran to the second-story balcony of the apartment and heard two clicks of a gun behind him as it misfired.[2] The third shot fired and struck the wall as Jarvoan escaped onto the balcony and jumped to the ground. Scott shot at Jarvoan from the balcony and hit him once, grazing the top of Jarvoan's head. Jarvoan found two strangers sitting in a car who agreed to take him to the hospital. Back in the apartment, Jermisha was still in the bedroom with the cover over her head. After she had heard the gunshots, she heard a man walk into the bedroom, and she was able to see his feet standing beside the bed from underneath the cover. She then heard two clicks of a gun and one of the men instructing the others to leave her alone. The three men left the apartment with Jarvoan's and Jermisha's cell phones, $6,000 and 80 grams of heroin from Jarvoan, Jarvoan's wallet, and approximately $100 from Jermisha's purse.

McQuinn was charged with two counts of abduction for pecuniary benefit, two counts of robbery, malicious wounding of Jarvoan, and using a firearm in the commission of each of these felonies.[3] A jury found McQuinn guilty of abducting Jermisha, of using a firearm in the abduction of Jarvoan, and of using a firearm in the malicious wounding of Jarvoan. The jury

---

[1] Jermisha testified that Gray and Scott had brought Jarvoan back to the bedroom, *see* J.A. at 94, while Jarvoan testified that it had been McQuinn and Gray, *see id.* at 132-33.

[2] The testimony is unclear as to whether McQuinn or Scott was firing at this point. *See id.* at 136-39.

[3] McQuinn was also charged with the attempted murder of Jermisha, using a firearm in the commission of that attempted murder, and possession of a firearm by a convicted felon, but these charges were either dismissed or nolle prossed.

found him not guilty of abducting Jarvoan and was deadlocked on the charge of malicious wounding of Jarvoan. The jury also found McQuinn not guilty of using a firearm in the abduction of Jermisha and not guilty on both counts of robbery and their attendant firearm charges. The jury recommended the minimum sentence of 28 years for all of the convictions (20 years for the abduction, 3 years for the first firearm offense, and 5 years for the second), which the trial court imposed.

McQuinn moved to set aside the verdicts, arguing that the two firearm convictions could not stand when the jury had failed to find him guilty of the predicate offenses. McQuinn also challenged the sufficiency of the evidence for all of the convictions. Rejecting both arguments, the trial court denied the motion. McQuinn appealed his convictions to the Court of Appeals on the same grounds, but his petition mistakenly referenced a non-existent conviction for using a firearm in a robbery instead of his actual conviction for using a firearm in a malicious wounding. The Court of Appeals denied his petition with respect to the sufficiency of the evidence and the predicate-offense argument pertaining to abduction. The Court of Appeals dismissed his petition, however, as it pertained to the non-existent conviction for using a firearm in a robbery.

McQuinn appealed to this Court, and we granted his assignments of error solely pertaining to whether the jury could convict him of using a firearm during a felony when it had not convicted him of the predicate offense and whether the Court of Appeals could dismiss his petition based upon his mistaken reference to robbery rather than malicious wounding.

## II.

Inconsistent verdicts against a defendant in a single, criminal, jury trial typically arise in one of three scenarios. In the first, a jury's guilty verdict on one charge is irreconcilably inconsistent with another guilty verdict on a different charge. *See, e.g.*, *United States v. Powell*, 469 U.S. 57, 69 & n.8 (1984) (allowing a jury's inconsistent verdicts to stand but stating that "[n]othing in this opinion is intended to decide the proper resolution of a situation where a defendant is convicted of two crimes, where a guilty verdict on one count logically excludes a finding of guilt on the other"). In the second scenario, the evidence is insufficient as a matter of law to find the defendant guilty of a predicate offense even though the defendant is convicted of a compound offense, and in such a case, the finding of legal insufficiency on the predicate

3

offense requires overturning the guilty verdict on the compound offense. *See, e.g.*, *Jay v. Commonwealth*, 275 Va. 510, 527 (2008).[4]

The final scenario is one in which the evidence is legally sufficient to convict the defendant of the predicate offense, but the jury has reached seemingly inconsistent (though not necessarily mutually exclusive) verdicts by convicting the defendant of the compound, but not the predicate, offense. In such cases, the apparently inconsistent verdicts must stand because the jury could have convicted the defendant on both charges but quite possibly decided not to do so out of a sense of grace and leniency. *See Reed v. Commonwealth*, 239 Va. 594, 596-98 (1990). That scenario stands in contrast to one in which a jury, faced with insufficient evidence to convict on the predicate offense, nonetheless finds the defendant guilty of the compound offense. The latter verdict cannot be squared with the former based upon a supposition of grace and leniency. A defendant legally secure in his presumption of innocence needs neither grace nor leniency.

In *Reed*, we addressed the predicate-offense argument that McQuinn makes in this appeal and rejected it, finding that a defendant could be convicted of using a firearm during a robbery when the jury had found him not guilty of the robbery itself. *See* 239 Va. at 594-98. We reiterated "that 'verdicts cannot be upset by speculation or inquiry' into whether they 'may have been the result of compromise, or of a mistake on the part of the jury.'" *Id.* at 597 (citation omitted). *See generally* 5 Ronald J. Bacigal & Corinna Barrett Lain, Virginia Practice Series: Criminal Procedure § 18.6, at 617-18 (2019-2020 ed.); John L. Costello, Virginia Criminal Law and Procedure § 57.9[1], at 965-66 (4th ed. 2008); 6 Wayne R. LaFave et al., Criminal Procedure § 24.10(b), at 717-23 (4th ed. 2015 & Supp. 2019-2020).

McQuinn argues that this is not simply an "inconsistent verdict" case but a case in which the underlying predicate felonies are statutorily required. The defendant in *Reed*, however, made

---

[4] In *Jay*, we overturned an attempted robbery conviction because the evidence was insufficient as a matter of law to prove that charge. *See* 275 Va. at 527. That holding necessarily required us to overturn the defendant's conviction for attempted use of a firearm during the commission of an attempted robbery. *See id.* We included *Reed v. Commonwealth*, 239 Va. 594, 596-98 (1990), as a "*but see*" citation for the proposition that we have upheld inconsistent jury verdicts regarding the same offenses. *See Jay*, 275 Va. at 527. In hindsight, we should have used a "*but cf.*" citation signal to demonstrate the factual distinction between the two scenarios. In *Jay*, the evidence was insufficient as a matter of law to convict the defendant of the predicate offense. *See id.* In *Reed*, we made no such finding.

4

the same argument. After describing the affirmance of inconsistent verdicts in *Sullivan v. Commonwealth*, 214 Va. 679 (1974) (per curiam), we stated in *Reed*, "Reed argues that we should create an exception to *Sullivan* when a jury renders inconsistent verdicts in a case involving compound and predicate offenses." *See Reed*, 239 Va. at 596-97. We went on to analyze two United States Supreme Court cases that had dealt with predicate offenses. *See id.* at 597 (citing *Powell*, 469 U.S. 57; *Dunn v. United States*, 284 U.S. 390 (1932), *abrogated on other grounds by Ashe v. Swenson*, 397 U.S. 436, 443-45 (1970), *and Sealfon v. United States*, 332 U.S. 575, 578-79 (1948)). We concluded, like the Supreme Court had in *Powell*, "that such an exception 'threatens to swallow the rule.'" *Id.* (citation omitted).

In declining to depart from these precedents, we reiterate the rationale behind them: Because the jury (i) may have erred in failing to convict the defendant of the predicate offense while finding him guilty of the compound offense, *or* (ii) may have made a mistake in finding the defendant guilty of the compound offense while finding him not guilty of the predicate offense, *or* (iii) may have "simply decided to be lenient with the defendant" by convicting him only of the compound offense,

> [i]nconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Commonwealth is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.

*Id.* at 597-98 (alteration omitted) (quoting *Powell*, 469 U.S. at 65).

Our view is strengthened by the observation that Virginia is "more careful than most states to protect the inviolability and secrecy of jurors' deliberations," and thus "a court, in a case like this, is unlikely to discover what motivated the jury." *Id.* at 598 (citation omitted). We do not view that deliberative safe space with skepticism. To the contrary, we believe that preserving the secrecy of jury verdicts honors the jury's role "as 'the democratic balance in the Judiciary power,'" Akhil Reed Amar, The Bill of Rights: Creation and Reconstruction 95 (1998) (citation omitted), and secures to the citizenry "a share of Judicature which they have reserved for themselves," *id.* at 94 (citation omitted). This reservation of power presupposes that, while engaged in the task of sorting out disputed facts, citizen juries are "the best investigators of truth, and the surest guardians of public justice," 3 William Blackstone, Commentaries *380 (altering

5

archaic spelling); *see also* 2 The Works of the Honourable James Wilson 315-17 (Bird Wilson ed., 1804).[5]

III.

For these reasons, we hold that the Court of Appeals did not err by refusing to vacate McQuinn's convictions for using a firearm in the commission of an abduction and using a firearm in the commission of a malicious wounding. We thus affirm the judgment of the Court of Appeals.

This order shall be published in the Virginia Reports and certified to the Court of Appeals of Virginia and to the Circuit Court of the City of Richmond.

A Copy,

Teste:

Douglas B. Robelen, Clerk

---

[5] As noted earlier, *see supra* at 3, McQuinn also contends that the Court of Appeals erred in failing to address his mislabeled predicate-offense argument pertaining to robbery. Our holding addresses the merits of McQuinn's entire argument before the Court of Appeals, which was not divided according to the different predicate offenses, *see* CAV Pet. at 20-23, thus mooting any need to rule upon his mislabeled predicate-offense argument. *See Appalachian Reg'l Healthcare v. Cunningham*, 294 Va. 363, 370 n.5, 375 n.10 (2017) (finding that the Court's holdings rendered certain assignments of error moot).