COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, Friedman and Callins
Argued by videoconference


ROBIN GREER QUINTANA, A/KA
 ROBIN LYNN PUGH

                                        MEMORANDUM OPINION* BY
v.        Record No. 0552-21-3              JUDGE DOMINIQUE A. CALLINS
                                           MAY 24, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
Stacey W. Moreau, Judge

Carolyn H. Furrow (Carolyn H. Furrow, P.C., on brief), for
appellant.

Rebecca M. Garcia, Assistant Attorney General (Jason S. Miyares,
Attorney General; Maureen E. Mshar, Assistant Attorney General,
on brief), for appellee.


The trial court convicted the appellant, Robin Greer Quintana, also known as Robin Lynn

Pugh (hereinafter "Pugh"), of unauthorized use of a motor vehicle, in violation of Code § 18.2-102.

Pugh challenges the sufficiency of the evidence to sustain her conviction. For the following

reasons, we affirm the trial court's judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*,

295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so,

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

we discard any of Pugh's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473.

On February 7, 2020, Vinton Police Corporal Alterio arrived on the scene of a single vehicle crash. He found Pugh seated on the passenger side of a totaled gold Mustang, her legs visible outside the vehicle. The vehicle itself was stopped over a chain link fence. Pugh appeared confused and "a little disoriented." The Mustang belonged to her friend, David Nichols. Nichols's insurance company paid him about $14,000 for the loss of the vehicle.

Nichols testified that on February 5, 2020, he allowed Pugh to use his Mustang to pick up his blood pressure medication from a Kroger store in Rocky Mount, on the condition that she pick up the medicine and come straight back to his house. Nichols stated that he did not permit Pugh to go anywhere else with his car or to keep the car overnight. About an hour after she left, Nichols began calling Pugh, but she did not answer his calls. Although they "might have spoken" since the accident, Nichols concluded, he and Pugh never had a conversation about the loss of his car.

Amy Arthur, Pugh's longtime friend, testified that she was at Nichols's house on February 5, 2020, together with her brother, Pugh, and Nichols. Arthur asked Nichols's permission for Pugh to use Nichols's car to drive to Kroger to obtain feminine hygiene products. Nichols consented. While Arthur and Pugh were driving, Arthur realized that she needed to drive her brother to Roanoke. She called Nichols to ask if they could take that detour. According to Arthur, Nichols agreed on the condition that they return the car by 9:00 p.m. so that he could get his medication from Kroger. She later testified that Nichols had requested they return the car by 9:00 a.m. the next day. The next day, while still in Roanoke, Arthur woke to a phone call from Nichols reporting that Pugh had wrecked his car. As Corporal Alterio testified that he found Pugh on February 7, Arthur insisted that the police reported the wrong accident date.

Ultimately, Pugh took the stand. She denied taking Nichols's car without permission but admitted that she drove Arthur to Roanoke and wrecked the car while driving back to Nichols's home. She said that Nichols told her that he had to file a police report to receive an insurance payout for the accident. Pugh admitted to being on methamphetamines during the relevant time but denied that the drugs affected her memory. She acknowledged that her criminal history includes four felony convictions and five convictions involving lying, cheating, or stealing.

At the conclusion of all the evidence, Pugh argued that Nichols was an unreliable witness and that "there [was] a lot of doubt to go around in this case." But the trial court found that Nichols was "the most credible witness" and that Pugh's testimony was incredible. Accordingly, the court convicted Pugh of the unauthorized use of a motor vehicle and sentenced her to four years' imprisonment on that conviction, with three years suspended.[1] This appeal follows.

ANALYSIS

Pugh contends that the evidence was insufficient to sustain her conviction because the evidence is conflicting.[2] At trial, Pugh argued that Nichols was an unreliable witness and that the

---

[1] The April 21, 2021 sentencing order reflects that Pugh received additional sentences for other convictions not the subject of this appeal.

[2] The Commonwealth argues that Pugh disregarded Rule 5A:20(e), which requires that an opening brief contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." It is true that a party asserting error by the trial court has a "duty to present that error to us with legal authority to support their contention." *Fadness v. Fadness*, 52 Va. App. 833, 851 (2008). Yet our review for noncompliance with Rule 5A:20(e) includes considering "whether any failure to strictly adhere to the requirements of Rule 5A:20(e) is insignificant," and thus does not impede our ability to address the merits of the assignment of error. *Jay v. Commonwealth*, 275 Va. 510, 520 (2008). We find Pugh's brief sufficient to apprise the Commonwealth and this Court of the depth and substance of her position and her argument, rendering Pugh's noncompliance insignificant under the circumstances. For the same reasons, we do not address the Commonwealth's contention of noncompliance with Rule 5A:12.

Commonwealth therefore did not meet its burden of proof. Assuming without deciding whether Pugh properly preserved her argument,[3] we hold that the trial court did not err.

When a party challenges the sufficiency of the evidence, we presume the correctness of the lower court's judgment, refraining from disturbing it on appeal unless it is plainly wrong or unsupported by evidence. *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020). Rather than substitute the judgment of the trial court with our own, viewing the evidence in the light most favorable to the prevailing party, on appeal we ask only "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "'The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility' as well as 'the weight to be given their testimony.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (1999). Therefore, we decline to disturb such credibility determination unless we find "'that [the witness'] testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" *Id.* (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011) (alteration in original).

"A conviction for unauthorized use of a vehicle under Code § 18.2-102 'requires proof of use without the consent of the owner with intent to deprive the owner of possession temporarily but without intent to steal.'" *Otey v. Commonwealth*, 71 Va. App. 792, 798 (2020) (quoting *Overstreet v. Commonwealth*, 17 Va. App. 234, 236 (1993)). Even where an individual originally receives consent, her permissive use can convert to unlawful possession when use exceeds the scope of consent. *Id.*

---

[3] The Commonwealth argues that Pugh failed to preserve her argument under Rule 5A:18. However, we choose, consistent with principles of judicial prudence, to decide this case on the best and narrowest grounds. *See Luginbyhl v. Commonwealth*, 48 Va. App. 58, 64 (2006).

Nichols testified that he allowed Pugh to use his Mustang to pick up his blood pressure medication from Kroger, provided she pick up the medicine and come straight back to his house. Two days later, Corporal Alterio discovered Pugh in the car in Roanoke. Nichols testified that Pugh did not have permission to take the car to Roanoke, and the trial court had a right to credit that testimony. *See Kelley*, 69 Va. App. at 626. The trial court's credibility determination was neither plainly wrong nor unsupported by the evidence.

Pugh argues that Nichols's testimony was inherently incredible because, according to her, Nichols said he had to file a police report to receive an insurance payout for the car. Although Nichols said that he never talked to Pugh about the missing car, he acknowledged that his insurance required that he file a criminal complaint to be compensated for the loss of his car. This acknowledgment did not necessarily negate the credibility of Nichols's testimony about the extent of his permission to Pugh. The trial court acted within its purview to find Nichols's testimony credible, regardless of Nichols's motivation for testifying in support of the criminal charge. *See id.* Pugh also emphasized as challenging Nichols's credibility Arthur's testimony that Nichols permitted Arthur to take the car to Roanoke. Even if true, this does not prove that Nichols permitted Pugh to drive the car to Roanoke.

Viewed in the light most favorable to the Commonwealth, the evidence shows that Nichols permitted Pugh to use his car for a limited purpose—to drive to Kroger in Rocky Mount and back. When Pugh did not return with the vehicle after an hour, and then an overnight had passed, Nichols called the police. Corporal Alterio found Pugh with the car in Roanoke. The evidence is sufficient for a reasonable factfinder to conclude that Pugh exceeded the bounds of her permission and her lawful use converted to an unlawful use. The trial court's judgment is supported by the evidence, and it is affirmed.

*Affirmed.*