UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, AtLee and Senior Judge Clements
Argued at Lexington, Virginia

RUPERT BERNARD BONHOTEL

MEMORANDUM OPINION[*] BY
v.      Record No. 0040-16-3      JUDGE RICHARD Y. ATLEE, JR.
                                  DECEMBER 6, 2016

MICHELLE JANE JONES WATTS

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
William D. Broadhurst,[1] Judge

Gordon H. Shapiro (Shapiro & Kurtkin, on brief), for appellant.

Ellen S. Weinman (Robin Dearing, Guardian *ad litem* for the
minor child, on brief), for appellee.

BACKGROUND

Rupert Bonhotel and Michelle Watts had a daughter in 2005. Ten years later, the Circuit

Court for the City of Roanoke awarded primary physical custody to Michelle Watts, and set a

visitation schedule between Rupert Bonhotel and his daughter. Rupert Bonhotel appealed and

assigns three errors. For the reasons that follow, we affirm in part and reverse in part.

FACTS

"When reviewing a trial court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). Rupert Bonhotel

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Clifford R. Weckstein presided over the first day of the hearing, on February 3, 2015. Judge William D. Broadhurst presided over the second day of the hearing, on July 24, 2015 and entered the final order on December 10, 2015.

("father") and Michelle Watts ("mother") had a child in 2005. In 2009, the Juvenile and Domestic Relations District Court for the City of Roanoke ("the J&DR court") entered an order granting the parents joint legal and shared physical custody of the child "with the primary residence being with the mother." The 2009 order did not address visitation, an issue the parties continued to manage by agreement.

In November of 2012, however, father moved the J&DR court to modify its order and grant him primary physical custody of the child. While the matter was pending in the J&DR court, the child rotated between the parents every seven days, pursuant to the terms of a temporary consent order. Ultimately, the J&DR court ordered that the child live with mother during the school year, with father having visitation every Wednesday and every other weekend. Father appealed to the Circuit Court for the City of Roanoke ("the circuit court").

In the circuit court, father sought an arrangement similar to the one in place under the terms of the temporary consent order previously entered by the J&DR court, whereby each parent had the child every other week. By contrast, mother asked the circuit court "to continue the [o]rder of the [J&DR court] but to continue it year round." Arguing a third position, the guardian *ad litem* asked the circuit court to "award sole legal and physical custody to" mother.

In July of 2014, the circuit court entered a "Uniform Pretrial Scheduling Order" ("the pretrial order"). Part V of the pretrial order required the parties to exchange a list of witnesses and exhibits that the parties proposed to call and introduce at trial. The last sentence of Part V stated:

> Any objections to exhibits or witnesses shall state the legal reasons
> therefor except on relevancy grounds, and shall be filed with the
> Clerk of the Court and a copy delivered to opposing counsel at
> least five days before trial or the objections will be deemed waived
> absent leave of court for good cause shown.

Father timely filed and exchanged a list of exhibits and witnesses, in compliance with Part V of the pretrial order. Neither mother nor the guardian *ad litem* objected to any of father's witnesses or exhibits. Among the exhibits father listed was a document from a local hospital ("Exhibit 2") generated after the child visited the hospital in 2013. Exhibit 2 contained notes from a nurse who had spoken with the child. The notes show that the child said "she feels safe at home with her father" but "sometimes she does not feel safe at home with mother." On the first day of the hearing, father moved to introduce Exhibit 2. Both mother's attorney and the guardian *ad litem* objected, claiming that the exhibit was both hearsay and irrelevant. Father responded that Exhibit 2 was relevant and was not hearsay and that any hearsay objection was waived pursuant to the pretrial order. The circuit court ruled: "The [c]ourt excludes [Exhibit 2] on the basis that it is inadmissible hearsay." The circuit court elaborated further that "[f]or good cause shown, the [c]ourt is not going to rewrite the laws of evidence of this Commonwealth."

On the second day of the hearing, father's attorney stated: "[W]e would ask that the [c]ourt conduct an[] interview pursuant to Virginia Code Section § 20-124 of [the child] in [c]hambers, specifically to ask her essentially to tell you what her preferences are and to address any concerns that might have been raised." Father's attorney argued that it was "appropriate for the [c]ourt [to] talk to her in [c]hambers without the presence of the [p]arties or counsel." When the circuit court agreed, father's attorney added: "Provided that a record of the proceeding is made." Ultimately, the circuit court decided to allow the guardian *ad litem* to be present for the *in camera* interview, over father's objection. (Father alleged that the child did not trust the guardian *ad litem*.) While the circuit court spoke with the child *in camera*, father's attorney asked a bailiff: "Would you alert the [c]ourt that I have an[] objection to it being done without a court reporter?" The bailiff replied: "The Judge said that he would make a record of it." While

- 3 -

the guardian *ad litem* was present for the interview *in camera*, neither the parties, their attorneys, nor a court reporter were present.

Following a recess, the circuit court summarized his *in camera* interview of the child:

> Court is again in session. All right, the child—I've spoken to the child in [the guardian *ad litem*]'s presence in [c]hambers and I just told her that her parents love her a great deal, and they want to spend all of the time with her that they could, and because that couldn't happen, that I had to make decisions, and I was going to be the one that made the decision and she was not in the middle of that decision, and that I would probably make a decision that neither one of the parents liked and that she wouldn't like either, very much, and that is just the way that things go.
>
> She indicated that she loved both parents, that both houses were fine houses, and she has no complaints with either one, and the only complaint that she voiced was that during trades, sometimes the parents—trades and exchanges, the parents getting aggravated with each other and appear to argue about notifications of trips and not being notified on what have you, and she didn't like that, but she otherwise expressed no preference for either parent.
>
> She loves you both very much, and the last thing she asked when she walked out was when was this going to be over and I told her that I didn't know, so that was the interview with the child. She is very bright, very articulate, and very perceptive, and you are both lucky to have her.

Later, while handing down his decision from the bench, the circuit court stated:

> There is no preference that the child expressed to the [c]ourt, and frankly, at ten years old, that she admitted when talking to me, when she's with her mother, and her mother makes her do something she doesn't like, she would rather live with her father, and when she is with her father and he makes her do something she doesn't like, she would rather live with her mom. She's just pushing your buttons.

Following an explanation of its ruling from the bench, the circuit court summoned the child into open court and gave her some words of encouragement, explaining portions of his ruling directly to her.

The circuit court entered an order on December 10, 2015 awarding the parents joint legal custody, and awarding mother primary physical custody. The circuit court ordered that the child would live with mother during the school year, with father having visitation every other weekend and every Wednesday. Paragraph 11 of the order stated: "The child shall continue in counseling with [the counselor] until he releases her or until he recommends some other course. The parents shall fully cooperate with the child's counselor and shall follow his or her recommendations." Father noted his appeal to this Court.

ANALYSIS

Assignment 1

> The relationship between a parent and child is a constitutionally protected liberty interest under the Due Process Clause of the Fourteenth Amendment. Indeed, the Supreme Court of the United States has characterized a parent's right to raise his or her child as "perhaps the oldest of the fundamental liberty interests recognized by this Court."

L.F. v. Breit, 285 Va. 163, 182, 736 S.E.2d 711, 721 (2013) (citations omitted) (quoting Troxel v. Granville, 530 U.S. 57, 65 (2000)). "We review such issues of . . . constitutional interpretation under a *de novo* standard of review." Bergaust v. Flaherty, 57 Va. App. 423, 429, 703 S.E.2d 248, 250-51 (2011).

In his first assignment of error, father asserts that "[t]he trial court erred in delegating to a non-parent, non-party, third party (child's counselor) unlimited, unfettered discretion over any and all parenting decisions to which both parents have to adhere or be subject to the contempt power of the court." Because we agree that the circuit court's requirement that the parents follow the counselor's recommendations is overly broad, we reverse and remand to the circuit court to address this overbreadth.

In the proposed final order father submitted (which the circuit court rejected), Paragraph 11 addressed counseling. That paragraph stated: "The child shall continue in counseling with

- 5 -

[the counselor] until he releases her or until he recommends some other course. The parents shall fully cooperate with the child's counselor." The only difference between father's proposed language and the paragraph as entered by the circuit court was the final clause: "and shall follow his or her recommendations." By ordering adherence to a third party's recommendations, the circuit court went too far. It is one thing to require cooperation with a counselor. Such a requirement implies a duty not to obstruct a counselor's work. Similarly, a limited requirement to follow certain recommendations of a counselor would not automatically run afoul of the constitutional freedom parents enjoy to raise their children as they see fit.

The problem with the circuit court's language is its lack of limitation. If a court orders a parent to obey a third party's recommendations, the court must limit the instances where such obedience is mandated. Without imposing some parameters, a court risks delegating its unique authority, abdicating its exclusive power to enforce requirements with the threat (and execution) of penal and monetary sanctions. When a court fails to draw limits on the circumstances under which a parent must follow a third party's recommendations, those recommendations become orders themselves.

"Finding an error by the court does not end our inquiry, however. When this Court finds that error has been committed by a trial court, we are required to consider whether the error was harmless." Milam v. Milam, 65 Va. App. 439, 459, 778 S.E.2d 535, 544 (2015). Code § 8.01-678 states in relevant part:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.

The overly-broad language of Paragraph 11 impinges upon parenting decisions protected by the Due Process Clause of the Fourteenth Amendment. The unlimited requirement that the

- 6 -

parents follow the counselor's recommendations affects not only father, but mother as well (although she is the appellee here). For these reasons, we do not find the error harmless.

Assignment 2

In his second assignment of error, father asserts that the circuit court erred when it interviewed the child *in camera* "contrary to the mandatory requirements of [Code] § 20-124.2:1." When an assignment of error requires this Court to interpret the words of a statute, we conduct such review *de novo*. Testerman v. Commonwealth, 57 Va. App. 164, 167, 699 S.E.2d 522, 524 (2010). Code § 20-124.2:1 governs the procedures circuit court judges must employ when conducting *in camera* interviews of juveniles. It states:

> In any proceeding in a court of record to determine custody or visitation, when the court conducts an in camera interview of a minor child whose custody or visitation is at issue without the presence of the parties or their counsel, a record of the interview shall be prepared, unless the parties otherwise agree. The record of the interview shall be made a part of the record in the case unless a decision is made by the court that doing so would endanger the safety of the child. The cost of creating the record shall be taxed as costs to the parties to the proceeding.

The proceedings in this case were conducted "to determine custody or visitation." Code § 20-124.2:1. And the circuit court conducted "an in camera interview of a minor child whose custody or visitation [wa]s at issue." Id. Neither parent was present for the interview, nor were their attorneys. Therefore, the circuit court was required to prepare "a record of the interview . . . unless the parties otherwise agree." Id. Father did not agree that the circuit court could dispense with the preparation of a record.

Mother argues that "[t]he General Assembly did not include in the statute . . . a requirement that the interview be recorded, only that a record be made." The question we face is this: does the circuit court's summary of its interview with the child qualify under the statute as the preparation of "a record of the interview"? For purposes of this opinion, we assume without

deciding that the circuit court's summary of the interview did not satisfy the statutory requirement that a "record of the interview shall be prepared." Thus we assume without deciding that the circuit court erred when it failed to have a court reporter present for such interview so that a transcription of the interview could be "made a part of the record." Although we assume this error, we also find it harmless.

The harmless error doctrine is codified in Code § 8.01-678. It applies not just in criminal cases, but in civil cases as well. Lavinder v. Commonwealth, 12 Va. App. 1003, 1006, 407 S.E.2d 910, 911 (1991) (*en banc*). Code § 8.01-678 states, in part:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.

The words the circuit court used in summarizing its *in camera* interview, handing down its decision, and explaining its ruling in open court to the child, show that it was unconcerned with soliciting the views and preferences of the child, but, instead was more concerned with reassuring the child, and with explaining to her that she was not at fault or responsible for the outcome of the hearing. The circuit court confirmed that the child expressed no preference for either parent. Finally, although the circuit court conducted the *in camera* interview with neither the parents, nor their attorneys, nor a court reporter present, the child's guardian *ad litem* was present and, further, the circuit court did not keep the substance of the interview secret. Following the interview, the circuit court summarized it in some detail. The circuit court referenced it further in explaining its ruling from the bench. For all of these reasons, we find that "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. Assuming

without deciding that the circuit court erred in the manner in which it conducted the *in camera* interview of the child, we find such error harmless.

### Assignment 3

Father's third assignment of error states, in part, that "[t]he trial court erred in failing to admit, without limitation, on the grounds of hearsay, [father]'s Exhibit 2." Father asserts that the exhibit "was admissible as an exception to the hearsay rule and, in any event, objections as to hearsay were waived under the terms of the trial court's pretrial scheduling order."

Father asserts that this assignment "presents purely legal questions of error of law which this Court should review *de novo*." This is incorrect. "We review the decision of a circuit court with regard to the admission of evidence according to an abuse of discretion standard." Branham v. Commonwealth, 283 Va. 273, 281, 720 S.E.2d 74, 79 (2012).[2]

This assignment of error actually contains two assertions: (1) the exhibit was not hearsay, and (2) even if the exhibit was hearsay, admission of the exhibit was required pursuant to the pretrial scheduling order. By his failure to cite adequate legal authority in support of these assertions, father has waived this assignment of error.

### *Status as Hearsay*

Other than the cases father cites in support of his erroneous conclusion regarding the standard of review, he provides not a single case in arguing the first part of his third assignment of error. His only reference to any other authority is to Virginia Rule of Evidence 2:803(3). Even with his citation to this rule, father does not bother to explain what that rule says or how it

---

[2] That the circuit court's decision to admit or exclude the evidence was governed, to a degree, by the pretrial scheduling order does not require us to review the circuit court's decision *de novo*. The circuit court was interpreting its own order, and we view such an interpretation deferentially. Leitao v. Commonwealth, 39 Va. App. 435, 438, 573 S.E.2d 317, 319 (2002) ("We defer to the trial court's interpretation of its own order.").

supports his argument.[3]  He simply asserts that the exhibit "was not hearsay" and "was clearly an exception under Rule 2:803(3) of the Virginia Rules of Evidence."  The "how"s and the "why"s of this claim he apparently leaves to this Court to unravel.  We decline the invitation to speculate.  Rule 5A:20(e) requires, in part, that an appellant before this Court include in his brief "the argument (including principles of law and authorities) relating to each assignment of error."

> A court of review is entitled to have the issues clearly defined and to be cited pertinent authority.  The appellate court is not a depository in which the appellant may dump the burden of argument and research.  To ignore such a rule by addressing the case on the merits would require this court to be an advocate for, as well as the judge of the correctness of, [appellant's] position on the issues he raises.  On the other hand, strict compliance with the rules permits a reviewing court to ascertain the integrity of the parties' assertions which is essential to an accurate determination of the issues raised on appeal.

Fadness v. Fadness, 52 Va. App. 833, 850, 667 S.E.2d 857, 865-66 (2008) (alteration in original) (quoting Jones v. Commonwealth, 51 Va. App. 730, 734-35, 660 S.E.2d 343, 345 (2008)).  Although failure to cite pertinent authority in support of an assignment of error does not automatically foreclose appellate review of that assignment, if the failure to cite authority is "significant," we may treat such an assignment as waived.  Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008) (citing Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008)).  Father's failure here was significant.  He cites no authority other than a passing reference to one Rule of Evidence.  For this reason, father waived this portion of his third assignment of error.

*Admissibility Pursuant to Pretrial Order*

In the second part of his third assignment of error, father argues that even if Exhibit 2 was hearsay, it was admissible pursuant to the pretrial order.  Once again, father offers no support for

---

[3] Rule 2:803(3) addresses a declarant's "[t]hen existing mental, emotional, or physical condition."

his argument. For the same reasons we found he waived his hearsay argument, we find that he waived his argument concerning the allegedly binding nature of the pretrial order.[4]

CONCLUSION

For the reasons stated above, we reverse the decision of the circuit court to order the parties to comply with the counselor's recommendations. We remand the case to the circuit court with instructions to modify Paragraph 11 in accordance with this opinion. Assuming without deciding that the circuit court erred in the manner in which it conducted the *in camera* interview of the child, we find such error harmless. Finally, we find that father waived his final assignment of error due to his failure to cite appropriate authority, in violation of Rule 5A:20(e).

Affirmed in part,
reversed in part,
and remanded.

---

[4] As a separate justification for admission of Exhibit 2, father argues that because the circuit court conducted an *in camera* interview with the child, he "necessarily determined that she was of the age of discretion" and was "of reasonable intelligence, understanding, age and experience . . . to voice her preference as to her physical custody as is contemplated by [Code] § 20-124.3(8)." Thus, father's argument goes, the opinion the child gave to the emergency room nurse, memorialized in Exhibit 2, should have been admitted. In addition to being unsupported by any authority, this argument was never presented to the circuit court. Thus, pursuant to Rule 5A:18, father may not present it now.