**Richmond**

JAMES MICHAEL JOHNSON

v.

COMMONWEALTH OF VIRGINIA

No. 0608-87-3

Decided March 7, 1989

COUNSEL

Graham G. Ludwig, Jr., James Michael Schull (Buxton & Lasris, P.C., on brief), for appellant.

Robert Q. Harris, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLE, J.**—The appellant, James Michael Johnson, was convicted in a jury trial of conspiracy to commit robbery. He was sentenced to ten years imprisonment. On appeal, Johnson raises the following issues: (1) whether the evidence was sufficient to support his conviction for conspiracy; (2) whether jurisdiction in Virginia was established; and (3) whether the trial court abused its discretion in permitting the Commonwealth to reopen its case to prove jurisdiction and venue.

On the morning of July 14, 1985, the body of Donald Ferguson was discovered at Wadlow Gap, an area in Scott County, Virginia, near the Tennessee border. Jerry Allen Reynolds subsequently pled guilty to the first degree murder and armed robbery of Ferguson. Mikki Bare Hughes pled guilty to second degree murder and robbery. A condition of Hughes' plea agreement was that she testify against Johnson, who initially was charged with

conspiracy to commit murder and conspiracy to commit robbery. The murder conspiracy charge was later stricken.

The evidence shows that Johnson was acquainted with Ferguson and knew he carried large amounts of cash on Fridays after he was paid. On Friday, July 12, 1985, Johnson, Ferguson, Hughes and Reynolds were at the Gateway Lounge, a bar in Kingsport, Tennessee. Hughes said Johnson approached her that night, pointed out Ferguson and told her about his habit of carrying cash. Reynolds joined the discussion about Ferguson, and the three went outside to continue talking in Reynold's van. Johnson asked Hughes to lure Ferguson to a place where he and Reynolds could rob him, but at that point Hughes would not agree.

Hughes said that from the beginning, the plan was to rob Ferguson at "the river," a place which Hughes and several other witnesses identified as Wadlow Gap, Virginia. "The river" was a popular swimming and fishing spot frequented by Hughes, Johnson, Reynolds and others in their crowd.

After the discussion in Reynolds' van, the three returned to the Gateway, and Johnson sent Ferguson over to talk to Hughes. Later, Johnson urged Hughes to resume the conversation and delay Ferguson's departure from the bar. Hughes refused and Ferguson left the bar for the evening. Johnson then stated, according to Hughes, "Well, he'll be here tomorrow."

Early the next evening, Hughes and Reynolds saw Johnson at a local grocery store. Hughes testified that the three went to drink liquor outside the store, where the following exchange took place: "Jerry [Reynolds] turned around to Mike [Johnson] and said, Are you still going to do what we talked about last night? and Mike said, Yeah, I'll be over there in about thirty minutes. Talking about the Gateway." Hughes admitted under cross-examination that she was unsure of the exact wording of Johnson's statement outside the grocery store, but that it indicated he was still committed to the plan.

Johnson did appear at the Gateway later that night, but Hughes could recall no more talk from him about robbing Ferguson. Ferguson bought Hughes a beer. Later, Hughes testified, "I'm not sure if Jerry or Mike, but one of them sent him over to talk to me." Reynolds continued to urge Hughes to speak to

Ferguson throughout the evening. Near midnight, Reynolds told Hughes that Ferguson was waiting for her outside. Hughes left the bar with Ferguson, agreeing to drink beer with him at the river. The record shows that at this point, Johnson was drunk and did not accompany Reynolds as he followed Hughes and Ferguson to the river.

At Wadlow Gap, Hughes and Ferguson talked and drank beer in Ferguson's car. Hughes testified she could hear Reynolds approaching. As Ferguson got out of the car to relieve himself, Hughes turned and saw Reynolds stand up behind Ferguson and hit him. She then heard Ferguson hit the ground. Hughes began running up the road from the car as she heard Reynolds strike Ferguson two or three more times.

Reynolds took $375 from Ferguson and gave Hughes $100 before they left the river. There is no evidence that Johnson received any share of the money.

Robert Beverly, Ferguson's neighbor, began searching for him when he failed to return home by Sunday morning. Beverly testified that when he asked if Johnson had seen Ferguson, Johnson volunteered to help search for him, and suggested that they go to the river at Wadlow Gap. Johnson told Beverly that he had overheard some people at the Gateway discussing a plan to take Ferguson to the river and rob him. Two other witnesses testified that Johnson stated on three occasions that he helped plan the robbery of Ferguson, but that he did not commit the murder.

At the close of the Commonwealth's evidence, the trial court struck the charge of conspiracy to commit murder. In response to a defense motion to dismiss the remaining charge for lack of jurisdiction in Virginia, the court allowed the Commonwealth to reopen its case and put on additional proof of jurisdiction. Johnson subsequently was convicted of conspiracy to commit robbery.

I.

We first consider whether Johnson's conspiracy conviction was supported by the evidence. Where sufficiency of the evidence is challenged on appeal, we view the evidence in the light most favorable to the Commonwealth, giving the Commonwealth all reasonable inferences fairly deducible therefrom. The judgment

must be affirmed unless it appears from the evidence that it was plainly wrong or without evidence to support it. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

 "Conspiracy is defined as an 'agreement between two or more persons by some concerted action to commit an offense.' " *Cartwright v. Commonwealth*, 223 Va. 368, 372, 288 S.E.2d 491, 493 (1982); *Amato v. Commonwealth*, 3 Va. App. 544, 352 S.E.2d 4 (1986). A conspiracy is committed when the agreement to commit the offense is complete, regardless of whether any overt act in furtherance of commission of the substantive offense is committed. *Ramsey v. Commonwealth*, 2 Va. App. 265, 270, 343 S.E.2d 465, 469 (1986). The elements of a conspiracy may be proved by circumstantial evidence. *Wright v. Commonwealth*, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982). " '[A] common purpose and plan may be inferred from a development and collocation of circumstances.' " *United States v. Godel*, 361 F.2d 21, 23 (4th Cir.), *cert. denied*, 385 U.S. 838 (1966) (quoting *Glasser v. United States*, 315 U.S. 60, 80 (1942)).

Our review of the record reveals ample support for the jury's verdict that Johnson conspired to rob Ferguson. Hughes' testimony at trial is direct evidence that each of the parties agreed to the robbery:

COMMONWEALTH: When did Jerry Reynolds and Mike come to an agreement to carry this out?
HUGHES: That night there in the van.
COMMONWEALTH: And when did you agree to . . .?
HUGHES: On the Saturday night when Jerry had Mr. Ferguson outside waiting to see me.

The existence of the agreement also is shown by the "development and collocation of circumstances" as pieced together from the testimony of Hughes and others. On Friday night, Johnson conceived the plan and recruited Hughes and Reynolds as participants. Throughout that evening, Johnson tried to persuade Hughes to bait the trap he and Reynolds set for Ferguson. On Saturday, before becoming too drunk to participate, Johnson reaffirmed his allegiance to the plan. On Sunday, he knew where to look for Ferguson and hinted to Beverly that a plan for the robbery had existed. Later, he boasted to others of helping plan the

robbery.

▮ Johnson argues that he was not part of the conspiracy because it could not have been formed until Hughes agreed to participate on Saturday night, after Johnson had been excluded because of his drunkenness. We disagree. "[A]n unlawful conspiracy may be and often is formed without simultaneous action or agreement on the part of the conspirators." *Interstate Circuit v. United States*, 306 U.S. 208, 227 (1939). Johnson and Reynolds became conspirators on Friday. The record shows that the two agreed that they would rob Ferguson. The plan called for Hughes to play an important role by luring Ferguson to the river, but there is no indication that Johnson and Reynolds would have abandoned the robbery if Hughes had continued to refuse her help. Hughes, however, joined the conspiracy on Saturday night when she left the Gateway with Ferguson. Johnson's failure to see the plan to its finish is immaterial because he already was implicated in the conspiracy.

## II.

We next determine whether the trial court erred in refusing to dismiss the conspiracy charge for lack of jurisdiction. Code § 18.2-22(a) makes it a felony to conspire either within or without Virginia to commit a crime within Virginia.[1] Johnson contends that there was inadequate proof that the conspirators agreed to commit the robbery within Virginia. Our review of the record suggests the contrary, and we find no error.

Hughes testified that from the beginning, the plan was to take Ferguson to "the river" at Wadlow Gap in Virginia. She was uncertain whether Johnson or Reynolds had suggested the location, but specifically recalled that Johnson had agreed to it. Asked how she knew what "the river" meant when it was mentioned in discussions with Johnson and Reynolds, Hughes replied, "Because everyone had gone there to go swimming or fishing. It was just, you know, the only place there on the river everybody went to." Hughes had been to "the river" with both Johnson and Reynolds

---

[1] Code § 18.2-22 states in pertinent part:
(a) If any person shall conspire, confederate or combine with another, either within or without this Commonwealth. to commit a felony within this Commonwealth . . . he shall be guilty of a felony. . . .

before.

Johnson's conduct during the search for Ferguson demonstrated his knowledge as to the planned location of the robbery. He repeatedly suggested that Beverly look for Ferguson at the river and stated that he had overheard a plan to rob Ferguson at the river.

## III.

■ Finally, we address Johnson's claim that the trial court abused its discretion in allowing the Commonwealth to reopen its case-in-chief to prove jurisdiction and venue. "[T]he long-standing rule in Virginia [is] that the order of proof is within the sound discretion of the trial court." *Armes v. Commonwealth*, 3 Va. App. 189, 194, 349 S.E.2d 150, 153 (1986) (citations omitted).

In *McClain v. Commonwealth*, 189 Va. 847, 854-55, 55 S.E.2d 49, 52-53 (1949), the Commonwealth closed its case and the defendant moved for dismissal for failure to prove venue. The trial court reopened the evidence and heard additional testimony to prove venue. The Supreme Court held that there was no error in this procedure since the order of introduction of testimony was for the determination of the trial court in the exercise of its judicial discretion. *See also Sutherland v. Commonwealth*, 6 Va. App. 378, 380-81, 368 S.E.2d 295, 297 (1988). Since Johnson has not shown any abuse of discretion on the part of the trial court in reopening the evidence to permit proof of jurisdiction and venue, we find no error in the procedure.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*

Barrow, J., and Duff, J., concurred.