COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Beales and Lorish
Argued at Richmond, Virginia

UNPUBLISHED

LYNETTE EBONY MORSE

v.        Record No. 1240-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
CHIEF JUDGE MARLA GRAFF DECKER
AUGUST 13, 2024

FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
W. Edward Tomko, III, Judge

Anthony N. Sylvester (Anthony Sylvester, PC, on brief), for
appellant.

Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Lynette Ebony Morse challenges her convictions for two 2019 offenses, attempted

abduction with intent to deprive the abductee of personal liberty and conspiracy to commit

abduction in violation of Code §§ 18.2-22, -26, and -47.[1]  She argues that venue was improper in

Prince George County because the evidence did not establish that any crime occurred there.  She

also contends the evidence was insufficient to sustain her convictions.  For the following reasons,

we affirm the convictions.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The appellant was charged with attempted abduction with the intent to extort money or
to obtain a pecuniary benefit, a category of abduction proscribed by Code § 18.2-48, and with
conspiring to commit that offense.  She was found guilty of the lesser-included attempt and
conspiracy offenses involving intent to deprive the abductee of personal liberty in violation of
Code § 18.2-47.

BACKGROUND[2]

The appellant worked at a Comcast Cable location in Prince George County until she transferred to a Comcast location in Florida in early 2018. Bradley Mitchell and Katrece Mason-Rogers were the appellant's co-workers at the Virginia location. Mason-Rogers and the appellant were "friends" for the two years they worked together, and Mason-Rogers had met the appellant's boyfriend, Ricky Taylor, "[s]everal times." This case involves two different groups of crimes, the first occurring in 2018 and the second in 2019. The appellant and Taylor were indicted for both sets of offenses following their apprehension for the 2019 crimes.

On September 1, 2018, several months after the appellant left her employment at the Prince George location, Mitchell and Mason-Rogers were accosted by two masked individuals as they left the Comcast building in Prince George at the end of the workday. One of the robbers was a "short, stocky" female who wore a hoodie, a wig, and a skull mask covering her face. The other assailant, a "slim" male with dreadlocks, was armed with a handgun with purple trim. He forced Mitchell at gunpoint to disarm the building's alarm and open the safe, while the appellant tried unsuccessfully to bind Mason-Rogers's hands as she lay face down on the floor. The robbers stole almost $26,000. Mason-Rogers told the police officer who questioned her

---

[2] On appeal, we review "the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." *Lambert v. Commonwealth*, 70 Va. App. 740, 746 (2019) (quoting *Hawkins v. Commonwealth*, 64 Va. App. 650, 652 (2015)). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn'" from that evidence. *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018) (per curiam)).

immediately after the robbery that she "felt 100 percent" that the appellant and Taylor were the robbers.[3]

On February 18, 2019, Mitchell left the Comcast office in Prince George County at about 5:30 p.m. and stopped at a nearby Wawa. While at a stoplight after leaving the Wawa, he noticed a black Chevrolet sedan with New Jersey license plates driving several car lengths behind him. The car continued to follow him as he drove on Interstate 95, even when he slowed to about ten miles below the speed limit. The black car passed him when he moved from the right lane to the middle lane. The car's windows were "completely blacked out," and Mitchell could not see inside it. When he moved back to the right lane, the black car resumed following him, staying "at least two car lengths" behind. Mitchell exited the interstate onto Chippenham Parkway, but he did not want the car to follow him to his home so he did not take his usual exit off the parkway and instead continued driving. The car followed him as he drove onto the Powhite Parkway and then back onto the interstate. Intimidated by the black car's pursuit and concerned for his safety, Mitchell called 911. The dispatcher directed him to go to the nearby Virginia State Police (VSP) headquarters in Henrico County. He missed the entrance to the VSP building and made a U-turn at an apartment complex parking lot. The black car drove into the apartment complex, which was just past the VSP building. Mitchell never saw who was in the car.

Trooper Charles McKenna of the VSP responded at 6:05 p.m. to Mitchell's report of a "suspicious vehicle" that was following him. McKenna found the appellant in the driver's seat

---

[3] The appellant and Taylor were later charged with committing the September 2018 robbery. They also were charged with abduction, use of a firearm, and wearing masks. Mason-Rogers testified that she recognized the appellant as the robber. She based this conclusion in part on the robber's mannerisms, including the way she stood with her hands on her hips. Mason-Rogers testified that she was familiar with the appellant's voice but the appellant did not speak during the robbery.

of a black sedan in the parking lot of the apartments. The car was not running but had recently been driven through puddles in the parking lot because there were water marks on the tires. McKenna detained the appellant and advised her of her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). She told the trooper that she was going to visit her sister who had recently moved to the area, but she did not know the address. Her sister did not corroborate the appellant's story when McKenna called her. He then called the person who had rented the car and learned it should have been returned a few days before. As a result, McKenna began to inventory the car's contents before having it towed. The appellant gave varying explanations for the items the trooper discovered in the car—two ski masks, two generic black plastic face masks, a roll of duct tape, gloves, two "fake beer bell[y]" stomachs, a flip phone, pepper spray, and a Bersa Thunder 380 pistol with purple trim.[4] The appellant denied any knowledge of the handgun.

Bystanders reported that a man who got out of the black car had obtained a ride to a nearby Walmart, and he was apprehended there a short time later. When the man, later identified as Ricky Taylor, was brought back to the black car for the appellant to identify, she said that a man she knew as "Blu" had been in the car with her, and she claimed not to recognize Taylor. The key fob for the black car was found at the Walmart.

The handgun from the car was submitted to the forensic laboratory for DNA and fingerprint analysis. The DNA analysis could not be completed because of the large number of contributors to the DNA on the gun. Additionally, no usable fingerprints were found on the firearm, magazine, or cartridges. The other items found in the black car were not tested because the appellant admitted knowing they were present.

_____

[4] A very dark, non-factory-installed window tint had been "crudely" placed over all of the windows to prevent anyone from "being able to see inside." Additional pieces of window tint material were found inside the car.

The appellant was tried in a single jury trial for both the 2018 robbery and related charges as well as the 2019 charges of attempted abduction and the related conspiracy to commit that offense. With regard to the 2019 crimes, the jury found her guilty of the lesser-included attempt and conspiracy offenses involving intent to deprive of personal liberty. She was sentenced to prison terms of ten years, all suspended, for conspiracy and five years for attempted abduction. The jury could not reach a verdict on the 2018 offenses, and the trial court declared a mistrial as to those offenses.

ANALYSIS

The appellant raises two issues on appeal. She asserts that the trial court erred by not "dismissing or quashing the indictments for lack of venue" and ruling the evidence was sufficient to support her convictions.[5]

I. Venue

The appellant contends that venue in Prince George County, the location of Comcast, was improper. She suggests that no crime occurred there because Mitchell did not notice he was being followed by a black sedan until he was in Colonial Heights, an adjacent jurisdiction, and no evidence proved she was in the car that followed him. The appellant filed a pretrial motion to dismiss the charges, alleging that no crimes took place in Prince George County. The trial court denied the motion. She raised a subsequent challenge to venue in her motion to strike, which the court also denied.

The applicable standard of review requires this Court to determine whether the evidence, viewed in the light most favorable to the Commonwealth, supports the trial court's finding of venue. *See Bonner v. Commonwealth*, 62 Va. App. 206, 211 (2013) (en banc). "[V]enue is not a

---

[5] The appellant initially contended that she had been denied the right to a statutory speedy trial under Code § 19.2-243, but she expressly waived that argument in her opening brief. *See Andrews v. Commonwealth*, 280 Va. 231, 252-53 (2010).

substantive element of a crime" and need not be proved "beyond a reasonable doubt." *Id.* at 210 (quoting *Morris v. Commonwealth*, 51 Va. App. 459, 469 (2008)). Rather, the Commonwealth establishes venue by producing direct or circumstantial evidence "sufficient to give rise to a 'strong presumption' that the offense was committed within the jurisdiction of the [circuit] court." *Id.* at 211 (quoting *Cheng v. Commonwealth*, 240 Va. 26, 36 (1990)).

Code § 18.2-22(c) sets forth venue for conspiracy: "Jurisdiction for the trial of any person accused of a conspiracy under this section shall be in the county or city wherein any part of such conspiracy is planned or in the county or city wherein any act is done toward the consummation of such plan or conspiracy." "Because conspiracy is a continuing offense, venue may be proper in more than one place."[6] *Barber v. Commonwealth*, 5 Va. App. 172, 182 (1987).

Venue for attempted abduction is governed by Code § 19.2-244(A), which states that "[e]xcept as otherwise provided by law, the prosecution of a criminal case shall be had in the county or city in which the offense was committed." Venue is "proper wherever any element of the offense occurs." *Bonner*, 62 Va. App. at 211.

"In cases involving criminal acts occurring in multiple jurisdictions, Virginia courts have analyzed 'the nature of the crime charged and the location of the acts constituting the crime' in order to determine where venue was proper." *McGuire v. Commonwealth*, 68 Va. App. 736, 742 (2018) (quoting *Kelso v. Commonwealth*, 282 Va. 134, 138 (2011)). Accordingly, we must examine the elements of conspiracy and attempted abduction.

"Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.'" *Speller v. Commonwealth*, 69 Va. App. 378, 389 (2018) (quoting *Wright v. Commonwealth*, 224 Va. 502, 505 (1982)). Proof of "an explicit agreement" is not

---

[6] According to defense counsel, the appellant initially was charged in Henrico County, but the charges were nolle prossed.

- 6 -

required, as a common purpose and plan may be inferred from circumstantial evidence. *Id.* (quoting *Gray v. Commonwealth*, 30 Va. App. 725, 736 (1999), *aff'd*, 260 Va. 675 (2000)). A conspiracy is complete once an agreement is made to commit an offense "regardless of whether any overt act" is done to further the substantive offense. *Johnson v. Commonwealth*, 8 Va. App. 34, 38 (1989).

As to the crime of abduction, a person commits that offense when he physically "detains his victim" with the intent to deprive him of his personal liberty "by keeping [him] in a specific place 'through the use of force, intimidation, or deception.'" *Brown v. Commonwealth*, 74 Va. App. 721, 731 (2022) (quoting *Commonwealth v. Herring*, 288 Va. 59, 74 (2014)); *see* Code § 18.2-47(A). A conviction for an attempted crime—in this case, attempted abduction—requires proof that the accused intended to commit the crime and did a direct act toward completing it but did not succeed. *See Jones v. Commonwealth*, 70 Va. App. 307, 314 (2019) (en banc). The direct act must be more than merely "arranging the means necessary" to commit the crime. *Id.* at 326-27 (quoting *West v. Commonwealth*, 156 Va. 975, 979 (1931)).

The record supports the trial court's ruling that venue was proper in Prince George County. First, the evidence established that the appellant was in the black car that followed Mitchell on February 18, 2019, the day of the attempted abduction. Maurice Reddick, the Comcast security guard on duty that day, saw a dark sedan parked on the shoulder of a public road near Comcast at about 1:00 p.m.[7] A thin Black man with braids was standing outside the car, and a light-skinned Black woman was sitting inside the car. The trial judge specifically noted in denying the appellant's motion to strike that the appellant was "light skinned" and

---

[7] Following the September 2018 robbery, Comcast initiated enhanced security policies. Comcast hired a security guard for the lobby and another guard for the rear of the building, and it installed security cameras at the front and side of the building. Instead of exiting the building by the front door into an open parking area, employees used the rear door and parked in a locked, gated area.

Taylor had long braided hair at the time of his capture. The evidence also established that Taylor was "skinny."

Further, surveillance videos from Comcast and a nearby construction company show that a black sedan was again in the vicinity of Comcast later that same afternoon, between 5:04 p.m. and 5:14 p.m. Mitchell noticed a black "Chevy" sedan with New Jersey license plates following him soon after he left Comcast about 5:30 p.m. The car continued to follow him until he arrived at VSP headquarters in Henrico County. Trooper McKenna found the appellant in a black sedan with silver trim and blacked-out windows at an apartment complex in close proximity to the VSP building. The car was a Chevrolet Malibu with New Jersey license plates and strongly resembled the car seen in the surveillance videos. The evidence supports the conclusion that the appellant was in the black car with Taylor in Prince George County and they began following Mitchell as soon as he left the Comcast premises.

Second, the record established that the crimes occurred in Prince George County. A reasonable inference from the evidence is that the appellant and Taylor committed the 2018 robbery at Comcast and intended to commit another robbery there on February 18, 2019.[8] Both September 1, 2018, and February 18, 2019, fell on holiday weekends when Comcast's daily receipts were kept overnight in the building, a fact that the appellant, a former employee, would

---

[8] The jury heard evidence of both the September 2018 robbery and the February 2019 crimes. They could not reach a verdict on the 2018 offenses, and a mistrial was declared. *See generally Reed v. Commonwealth*, 239 Va. 594, 596-98 (1990) (holding that a jury may decline to convict a defendant through compromise or leniency). Because the appellant was not acquitted of the 2018 robbery, however, the jury could consider evidence of that crime as it relates to the convictions for the 2019 offenses at issue in this appeal. *See generally Painter v. Commonwealth*, 47 Va. App. 225, 236 (2005) ("Collateral estoppel only bars the Commonwealth 'from introducing evidence to prove an offense for which a defendant has been *previously acquitted.*'" (quoting *Simon v. Commonwealth*, 220 Va. 412, 417 (1979) (emphasis added))); *see generally also Miller v. Commonwealth*, 217 Va. 929, 933 (1977) (holding that double jeopardy did not preclude a retrial where the first trial ended in a hung jury); *Page v. Commonwealth*, 40 Va. App. 703, 709-10 (2003) (same). This Court is therefore similarly permitted to consider that evidence under the parameters of traditional appellate review.

know.  The robbers wore face masks on September 1, 2018, and Trooper McKenna found face masks in the black sedan on February 18, 2019.  Trooper McKenna also found a distinct firearm with purple trim that closely resembled the firearm described by witnesses as being used in the September 2018 robbery.  People matching the descriptions of the appellant and Taylor were seen with a dark sedan in the vicinity of the Comcast building about 1:00 p.m. on February 18, 2019, and a black sedan with silver trim and heavily tinted windows like theirs was again seen nearby between 5:04 and 5:14 p.m.  But the increased security measures implemented after the 2018 robbery prevented nonemployees from entering the Comcast premises in 2019 in the same way the robbers had entered in 2018.  As a result, they had to follow Mitchell when he left the building about 5:30 p.m. in order to accomplish their criminal acts.

This evidence supports the reasonable inference that the appellant and Taylor conspired to abduct Mitchell to gain entry into the Comcast building.  Their conduct was an act in furtherance of both the conspiracy and the attempted abduction.  Accordingly, venue was proper in Prince George County.  *See Kelso*, 282 Va. at 137-39 (holding that where the defendant sold marijuana to a juvenile in one county and the juvenile distributed it in another county, venue was proper in the county where the distribution took place).

## II.  Sufficiency

The appellant contends that the evidence was insufficient to support her convictions for attempted abduction and conspiracy to commit that offense.

The Court is guided by well-established legal principles when considering the sufficiency of the evidence, viewing the evidence "in the light most favorable to the Commonwealth, the prevailing party at trial."  *Barnett v. Commonwealth*, 73 Va. App. 111, 115 (2021) (quoting *Smith v. Commonwealth*, 66 Va. App. 382, 384 (2016)).  The appellate court affirms the trial court's judgment "unless it appears from the evidence that the judgment is plainly wrong or

without evidence to support it." *Pulley v. Commonwealth*, 74 Va. App. 104, 123 (2021) (quoting *Poole v. Commonwealth*, 73 Va. App. 357, 363 (2021)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). "[T]he relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Washington v. Commonwealth*, 75 Va. App. 606, 615 (2022) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016)). "In applying this standard of review, we eschew the divide-and-conquer approach, which examines each incriminating fact in isolation, finds it singularly insufficient, and then concludes that the sum of these facts can never be sufficient. Instead, in an appellate sufficiency review, the evidence is 'considered as a whole.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)).

### A. Attempted Abduction

Relying on *Jones v. Commonwealth*, 70 Va. App. 307 (2019) (en banc), the appellant argues she was wrongly convicted of attempted abduction because merely following Mitchell as he drove was not a direct or "overt" act in furtherance of an abduction.[9] We disagree.

Code § 18.2-47(A) provides that "[a]ny person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty . . . shall be deemed guilty of 'abduction.'" A conviction for an attempted crime requires proof of two elements: "the

---

[9] The appellant does not challenge the sufficiency of the evidence to establish her specific intent to commit an abduction, except to the extent that it may be inferred from the commission of an overt act, which she contends she did not commit. As a result, we do not separately consider whether the acts proved here established her intent to commit an abduction as opposed to some other crime.

intent to commit the crime and the doing of some direct [or overt] act toward its consummation, but falling short of the accomplishment of the ultimate design." *Jones*, 70 Va. App. at 314 (alteration in original) (quoting *Rogers v. Commonwealth*, 55 Va. App. 20, 24-25 (2009)). The direct act "need not be the last proximate act" necessary to consummate the crime, but it must be more than merely "arranging the means necessary" to commit the crime. *Id.* at 326-27 (quoting *West*, 156 Va. at 979). "Whether the actions of a particular defendant rise to the level of an attempted crime is a fact-specific inquiry that must be decided on a case-by-case basis." *Northcraft v. Commonwealth*, 78 Va. App. 563, 603 (2023) (quoting *Ashford v. Commonwealth*, 47 Va. App. 676, 681 (2006)).

This Court considered in *Jones*, 70 Va. App. at 329 (emphasis omitted), whether an action was a "direct act" or simply "preparation." "Preparation consists in arranging the means necessary for the commission of the crime. [Conversely, t]he attempt is the direct movement towards its commission, after the preparations have been made." *Id.* at 326-27 (quoting *West*, 156 Va. at 979). The direct but ineffectual act intended to accomplish the crime, the "overt act," can be "slight," but it must go beyond mere preparation and "implicate one or more elements of the offense." *Id.* at 324, 329-30. The direct act "must be apparently (but not necessarily in reality) adapted to the purpose intended." *Id.* at 318 (quoting Joseph H. Beale, Jr., *Criminal Attempts*, 16 Harv. L. Rev. 491, 492 (1903)). In short, for criminal liability to attach to an attempted crime, "the intended crime must be in progress to some extent" in a way that "creat[es] a victim." *Id.* at 326, 330. "[T]here must be some appreciable fragment of the crime committed, it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter, and the act must not be equivocal in nature." *Id.* at 328 (quoting *Lewis v. Commonwealth*, 15 Va. App. 337, 340 (1992)).

This Court reversed Jones's attempted robbery conviction, holding that his actions did not go "beyond preparation to commit a robbery." *Id.* at 332. Police officers observed Jones and another man in an alley between two residences. *Id.* at 312. Jones fled when he saw the police but was apprehended a short time later. *Id.* He had a ski mask in his car. *Id.* Several hours later a police officer found a sawed-off shotgun under a bush near where Jones was seen running. *Id.* at 313. Jones told the police he was there to protect a friend who intended to rob a drug dealer, but no evidence indicated the drug dealer lived in the area where the police found Jones. *Id.* The intended crime had not yet "creat[ed] a victim." *Id.* at 330. This Court held that under the circumstances Jones committed no direct act in furtherance of the robbery. *Id.* at 332.

In the instant case, however, the evidence shows that the appellant did more than merely prepare for the intended abduction. Assembling items useful in an abduction, including pepper spray, duct tape, face masks, and a firearm—all items found in the car—indicated preparation.[10] But positioning herself near the Comcast premises close to the time that Mitchell left the building and doggedly pursuing him as he drove was a direct act of intimidating an identifiable victim to further the abduction. *See* Code § 18.2-47(A) (stating that the crime of abduction may be accomplished through the intimidation of another person). Intimidation occurs when a victim

_____

[10] The reasonable inference from the evidence in this case is that the intended crime was abduction. Therefore, *Jay v. Commonwealth*, 275 Va. 510 (2008), is distinguishable on its facts. The *Jay* opinion addressed two cases involving separate defendants, Jay and James. *See id.* at 510, 513. In James's case, an undercover officer arranged to buy marijuana from James, but when the officer refused James's repeated requests to get into his car, other law enforcement officers intervened before the transaction was completed. *See id.* at 521-22. James admitted after his arrest that he had no marijuana to sell and simply wanted the officer's money. *See id.* at 522-23. He was convicted of attempted robbery but argued the intended crime could have been obtaining money by false pretenses because no evidence proved he planned to use force to take the money. *See id.* at 524-25. Reversing his conviction, the Supreme Court held that the evidence was as consistent with attempting to obtain money by false pretenses as attempted robbery because no overt act established a taking by force or violence. *See id.* at 526-28. In light of the evidence in the instant case, by contrast, the only reasonable conclusion was that Mitchell would necessarily have to be abducted in order for a robbery to be committed at Comcast.

is put in fear of bodily harm even if no such intention is overtly expressed. *See Brown*, 74 Va. App. at 731-32. It may include "psychological pressure on [the victim] who, under the circumstances, is vulnerable and susceptible to such pressure." *Id.* at 732 (alteration in original) (quoting *Sutton v. Commonwealth*, 228 Va. 654, 663 (1985)).

Unlike *Jones*, in which the intended victim was not specifically identified and no evidence indicated he knew he was going to be robbed, Mitchell knew he was being followed by the black sedan as he left his place of business. Although he altered his speed and changed lanes, the black sedan continued to pursue him through four jurisdictions after he left the Comcast building. He could not see the car's occupants because the windows were "completely blacked out." Having been the victim of a robbery about six months earlier at the Comcast location, Mitchell reasonably was concerned by the consistent presence of the black car. Intimidated by the sedan's persistence and fearing for his safety as a result, he drove past his usual exit to prevent the car from following him to his home and then called 911.[11] When the dispatcher directed him to drive to the VSP headquarters, he did so. When he arrived there, the black car stopped in the parking lot of a nearby apartment complex rather than following him to the police headquarters.

Based on the facts before the jury, the offense was "in such progress that it w[ould have] be[en] consummated" if Mitchell had not diverted from the route to his home, called 911, and driven to the VSP headquarters. *Jones*, 70 Va. App. at 328 (holding that the attempted crime

---

[11] In light of our conclusion here, we do not address the Attorney General's argument that Mitchell also experienced a restraint on his freedom of movement, another element of the offense of abduction. *See* Code § 18.2-47(A). *See generally Brown*, 74 Va. App. at 731-32 (holding that an abduction occurred when the defendant kept the victim "in a specific place" by temporarily blocking her car in his driveway and engaged in additional conduct that put her in fear of harm).

"must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter").

This case is more similar to *Rogers* than *Jones*. In *Rogers*, 55 Va. App. at 22-23, the defendant and his accomplices went to the victim's apartment to rob him, armed with a gun and a baseball bat. The robbery was foiled when the victim saw the weapons and did not open his door. *Id.* at 22. This Court upheld the defendant's attempted robbery conviction, reasoning that the defendant's "acts went beyond planning," as he had "actually beg[u]n the robbery." *Id.* at 27; *see United States v. Simmons*, 11 F.4th 239, 251, 272-74 (4th Cir. 2021) (discussing both *Rogers* and *Jones* in upholding a conviction for attempted murder where the defendants obtained firearms, drove to the victim's house, and knocked on his door, but he did not open the door, thereby preventing the attempted murder).[12]

Mitchell's decision to go to the VSP building foiled the actual abduction, but it did not "absolve [the appellant] of attempting to commit [the] crime." *Rogers*, 55 Va. App. at 29; *cf. Carr v. Commonwealth*, 69 Va. App. 106, 115 (2018) ("[A victim's] eventual escape . . . d[oes] not preclude the fact finder from concluding that [the] appellant intended to deprive [the victim] of h[is] personal liberty at the time [of the abduction].").

Because the sufficiency of the evidence for an attempted crime must be determined on a case-by-case basis, not every instance of following a vehicle becomes a crime. Rather, as in this case, the totality of the circumstances establishes the offense. Here, a former co-worker identified the appellant as one of the two persons who robbed Comcast on September 1, 2018, a holiday weekend when daily receipts would not be picked up for deposit. The robbers, wearing

---

[12] In the same opinion, the court reversed a conviction for the attempted murder of a different victim where the defendants went to a house where they thought the intended victim lived but left without knocking on the door because the house looked empty and neighbors said they had not seen the person. *Simmons*, 11 F.4th at 274.

skull masks and armed with a purple-trimmed handgun, waylaid Mitchell and another Comcast employee as they left the building. The later February 18, 2019 offense also occurred on a holiday weekend. Two individuals matching the descriptions of the appellant and her boyfriend, Ricky Taylor, were seen with a dark sedan in the vicinity of the Comcast building about 1:00 p.m., and a car matching theirs, with silver trim and heavily tinted windows, was again seen nearby between 5:04 and 5:14 p.m. Due to enhanced security at the Comcast premises, including a fence surrounding the employee parking lot, they could not accost employees leaving the building as they had done six months earlier. Consequently, they followed Mitchell as he drove away after leaving work. Because their continued pursuit intimidated Mitchell, he diverted from his usual route to his home and called 911. The abduction was thwarted when Mitchell stopped at the VSP headquarters and the appellant and Taylor drove into a nearby apartment complex. The appellant remained in the car, but Taylor fled. Items useful in an abduction—face masks, duct tape, pepper spray, and a handgun with purple trim—were found in the car. The appellant's inconsistent explanations for the presence of those items and her initial refusal to identify Taylor as her accomplice tended to indicate her knowledge of their planned crime. *See Camann v. Commonwealth*, 79 Va. App. 427, 444 (2024) (en banc).

All of these facts reasonably establish that the appellant's conduct was more than mere preparation. Her pursuit of Mitchell as he drove from Prince George to Henrico intimidated him, which implicated an element of the offense of abduction and established him as a victim of the attempted crime. *See Jones*, 70 Va. App. at 324, 326, 329-30 (stating that the "overt act" must "implicate one or more elements of the offense" and "progress to some extent" in a way that "creat[es] a victim"). An "appreciable fragment of the crime [was] committed" before Mitchell blocked the abduction by driving to the VSP building, a "circumstance[] independent of the [appellant's] will." *Id.* at 328 (quoting *Lewis*, 15 Va. App. at 340). His actions to protect

- 15 -

himself "frustrate[d] the completion of the crime," but "[t]he intervention of an external factor . . . does not preclude convicting [the appellant] of *attempting* to commit the crime." *Rogers*, 55 Va. App. at 29. As *Rogers* makes clear, the fact that the appellant did not leave her car and approach Mitchell does not negate her culpability. *See id.* (holding that "the victim's refusal to answer the door" when the robbers appeared at his home was "the 'intervening cause' that prevented the completion of th[e] robbery" and did not "constitute[] a defense to the crime"). Accordingly, we affirm the conviction for attempted abduction.

### B. Conspiracy to Abduct

The appellant concedes that the evidence established "concert of activity" with Ricky Taylor, but she argues that the record did not show the aim of the conspiracy was to abduct Mitchell.

Rule 5A:18 states that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." The purpose of the rule "is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). Further, "a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding." *Fountain v. Commonwealth*, 64 Va. App. 51, 56 (2014) (quoting *Weidman v. Babcock*, 241 Va. 40, 44 (1991)); *see Maxwell v. Commonwealth*, 287 Va. 258, 264-65 (2014).

The appellant did not argue at trial that the evidence failed to show the aim of the conspiracy was to abduct Mitchell. In fact, in her motion to strike at the conclusion of the Commonwealth's case, she did not raise any specific challenge to the sufficiency of the evidence to support the conspiracy. In her renewed motion to strike after presenting her own evidence,

she merely "reincorporate[d]" her earlier arguments. Therefore, the appellant has not preserved the issue. *See* Rule 5A:18; *Arrington v. Commonwealth*, 53 Va. App. 635, 641-42 (2009) (holding that a party waives his argument on appeal if he failed to timely and specifically object at trial).

The appellant alternatively "asserts and relies upon" the ends-of-justice exception to Rule 5A:18.[13]

The exception "'is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997)). In determining whether to apply the exception, this Court considers whether the alleged error occurred and whether a "grave injustice" would result if the exception were not applied. *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt*, 66 Va. App. at 210 (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)).

As in the instant case, "when an appellant raises a sufficiency of the evidence argument for the first time on appeal, the standard is higher than whether the evidence was insufficient." *Brittle*, 54 Va. App. at 514. "[S]ome reason beyond mere insufficiency" must support applying the ends-of-justice exception. *Id.* The appellant "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Holt*, 66 Va. App. at 210 (quoting *Redman*, 25 Va. App. at 221). "Therefore, 'in examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine

---

[13] Although the appellant cites Rule 5:25, the contemporaneous objection rule that may apply to appeals to the Supreme Court of Virginia, we apply Rule 5A:18, the version of the rule potentially applicable to appeals in this Court.

whether the record contains affirmative evidence of innocence or lack of a criminal offense.'" *Id.* (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 695 (2011)). "Where the record does not affirmatively establish [such] error, we cannot invoke the ends[-]of[-]justice exception to Rule 5A:18." *Smith v. Commonwealth*, 59 Va. App. 710, 724 (2012). The exception does not apply here because the appellant has not demonstrated any miscarriage of justice.

"Conspiracy requires a shared intent and joint action . . . ." *Charity v. Commonwealth*, 49 Va. App. 581, 585-86 (2007) (quoting *Hix v. Commonwealth*, 270 Va. 335, 347 (2005)); *see Jones v. Commonwealth*, 279 Va. 295, 301 (2010) ("Code § 18.2-22, conspiracy to commit a felony, is violated when two or more persons agree to commit a felony offense . . . ."). The evidence must prove "(1) an agreement between two or more persons, which constitutes the act; and (2) an intent thereby to achieve a certain objective[,] either an unlawful act or a lawful act by unlawful means." *Hix*, 270 Va. at 347 (quoting Wayne R. LaFave, *Criminal Law* § 12.2, at 621 (4th ed. 2003)). In this case, the "unlawful act" to be achieved was abduction. "There can be no conspiracy without an agreement, and the Commonwealth must prove beyond a reasonable doubt that an agreement existed." *Velez-Suarez v. Commonwealth*, 64 Va. App. 269, 277 (2015) (quoting *Feigley v. Commonwealth*, 16 Va. App. 717, 722 (1993)). But "an explicit agreement" is not required. *Speller*, 69 Va. App. at 389 (quoting *Gray*, 30 Va. App. at 736). "'[M]ost conspiracies are "clandestine in nature,"' and '[i]t is a rare case where any "formal agreement among alleged conspirators" can be established.'" *Carr*, 69 Va. App. at 118 (alterations in original) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 636 (2011)). "[A] common purpose and plan may be inferred from a 'development and collocation of circumstances.'" *Brown v. Commonwealth*, 10 Va. App. 73, 78 (1990) (alteration in original) (quoting *United States v. Godel*, 361 F.2d 21, 23 (4th Cir. 1966)). The conspiracy is complete once the

agreement is made, and no overt act to further the underlying crime is necessary. *See Johnson*, 8 Va. App. at 38.

Here, the appellant has not established that a miscarriage of justice occurred. The totality of the evidence proved that she and Taylor conspired to abduct Mitchell. *See Charity*, 49 Va. App. at 587. The evidence provides no affirmative indication of her innocence, nor does it show that she was convicted of conduct that was not a criminal offense. *See Holt*, 66 Va. App. at 209-10. Accordingly, the appellant has waived her sufficiency challenge to her conspiracy conviction, and we do not apply the ends-of-justice exception.

## CONCLUSION

The evidence established that venue was proper in Prince George County. The evidence was sufficient to sustain the conviction for attempted abduction. The appellant waived her claim regarding the sufficiency of the evidence to sustain the conspiracy conviction. Accordingly, we affirm the convictions and remand the case to the trial court for the correction of a clerical error in the sentencing order.[14]

*Affirmed and remanded.*

---

[14] The verdict forms and sentencing order properly reflect that the appellant was found guilty of both *conspiracy* to commit and *attempt* to commit the substantive offense of abduction. The order, however, cites only the applicable abduction statute, Code § 18.2-47. We remand to the trial court to correct the omission from the sentencing order of the specific statutes proscribing the crimes of attempt and conspiracy at issue in this case, Code §§ 18.2-22 and -26. *See* Code § 8.01-428(B); *Bagley v. Commonwealth*, 73 Va. App. 1, 30 n.10 (2021).